**PETERSON et al. v. UNITED STATES,
for Use of MARSH LUMBER CO.**

**No. 8507.**

Circuit Court of Appeals, Sixth Circuit.

April 14, 1941.

C. W. Sellers, of Cleveland, Ohio (C. W. Sellers and Thompson, Hine & Flory, all of Cleveland, Ohio, and R. H. Treffinger and Henderson, Burr, Randall & Porter, all of Columbus, Ohio, on the brief), for appellants.

C. A. Fisher, of New Philadelphia, Ohio (C. A. Fisher and Fisher, Limbach, Smith & Renner, all of New Philadelphia, Ohio, and Richard T. Rector and Wilson & Rector, all of Columbus, Ohio, on the brief), for the United States, for Use of March Lumber Co., and Pure Oil Co., appellees.

D. Curtis Reed and Jos. F. Hogan, both of Columbus, Ohio, Carl Phares, of Cincinnati, Ohio, and Charles B. Johnson and Johnson & Johnson, all of Clarksburg, W. Va., on the brief, for Atlas Powder Co., Dravo-Doyle Co., and Lehigh Portland Cement Co., appellees.

Before SIMONS, HAMILTON, and MARTIN, Circuit Judges.

HAMILTON, Circuit Judge.

This is an action under the Heard Act, 40 U.S.C.A. § 270. Appellants are the contractor and his surety, respectively. Appellees are mechanics, laborers or materialmen of a subcontractor.

On June 3, 1933, the Muskingum Watershed Conservancy District was organized as a body corporate and political subdivision of Ohio, under authority of the State Conservancy Act (Sections 6828-1 to 6828-79 of the Ohio General Code). The purpose of its organization was flood prevention and regulation of the flow of streams in the

drainage basin of Muskingum River, which empties into the Ohio River, both streams being navigable.

On March 29, 1934, the Federal Emergency Administrator of Public Works of the United States entered into an agreement with the Conservancy District, under the authority of Section 202 of Title 2 of the National Industrial Recovery Act, approved June 16, 1933, 48 Stat. 195, 40 U.S.C.A. § 402 and Section 23 of the Conservancy Act of Ohio, for execution and operation of the Project and Official Plan of the Conservancy District for flood control and improvement of navigation on the two rivers involved. Under said agreement the United States Corps of Engineers were to assist in the preparation of the official plan, the construction of flood control reservoirs and the relocation of public utilities affected by the construction and operation of the reservoirs necessary in carrying out the plan. The Conservancy District was to obtain the lands and easements necessary for the project and were to maintain, operate and protect the same in such manner as the Chief of the Corps of Engineers of the United States decided would best serve the purposes of navigation and flood control on the Muskingum and Ohio Rivers.

The official plan and project included the Wills Creek Dam and Reservoir, located on Wills Creek in Guernsey County, Ohio, and a tributary of the Muskingum River. This dam and reservoir is gate controlled and has a spillway elevation of 779 feet above sea level. The Pennsylvania Railroad Compay had some tracks in the reservoir area below the spillway elevation of the dam which it was necessary to relocate to prevent their being flooded. The construction of Kimbolton Tunnel was a part of the railroad project.

For the purpose of effecting the relocation of the railroad tracks and roadbed, the United States of America, on June 27, 1935, entered into a formal contract with appellant Edward Peterson for the construction of the new railroad roadbed and tunnel in which contract he agreed to furnish the necessary labor and material and to prosecute and complete the work according to plans, surveys and specifications prepared by the War Department between Station 1332/24.6 and Station 1506/48.64. Simultaneously with the execution of the contract, appellant executed to the United States of America the usual penal bond pursuant to the requirements of Title 40 U.S.C.A. § 270 in the sum of $210,462.63, with appellant, American Surety Company of New York, as surety thereon. The conditions of the obligation are found in the margin.[1]

Appellant Peterson subcontracted a part of the work to Millson's Construction Company, which company defaulted in payments for supplies and services to mechanics, laborers and materialmen and, as a result, this action was instituted. Appellants answered and denied all liability on the bond on the sole ground that the United States of America did not at any time and does not now own any of the lands, buildings or works which were the subject matter of the contract between appellant Peterson and the United States and that the work done or to be done under the contract was neither public buildings nor public works within the meaning of the Heard Act. The court held the answers insufficient; hence this appeal, with this single issue presented.

The Heard Act (of August 13, 1894, as amended by Act of February 24, 1905, 40 U.S.C.A. § 270) provides that any person contracting with the United States for construction of a public building or prosecution and completion of any public work, shall execute bond, conditioned that the contractor shall promptly make payment to all persons who supply him with labor and

[1] Now Therefore, If the principal shall well and truly perform and fulfill all the undertakings, covenants, terms, conditions, and agreements of said contract during the original term of said contract and any extensions thereof that may be granted by the Government, with or without notice to the surety, and during the life of any guaranty required under the contract, and shall also well and truly perform and fulfill all the undertakings, covenants, terms, conditions and agreements of any and all duly authorized modifications of said contract that may hereafter be made, notice of which modifications to the surety being hereby waived, and if said contract is for the construction or repair of a public building or a public work within the meaning of the act of August 13, 1894, as amended by act of February 25, 1905, shall promptly make payment to all persons supplying the principal with labor and materials in the prosecution of the work provided for in said contract, and any such authorized extension or modification thereof, then, this obligation to be void; otherwise to remain in full force and virtue.

materials for the prosecution of the work, and gives to all such persons the right to intervene in a suit on the bond.

█ █ The term "public work" as used in the act is without technical meaning and is to be understood in its plain, obvious and rational sense. The Congress was not dealing with mere technicalities in the passage of the Act in question. "Public work" as used in the act includes any work in which the United States is interested and which is done for the public and for which the United States is authorized to expend funds. Undoubtedly the work of flood control and the promotion of commerce among the states, by the improvement of rivers and harbors, is public so far as it promotes a public object. From the standpoint that it promotes the benefit of a privately owned railroad, it is in a sense, private, but nonetheless public, although incidentally promoting private advantage. The rivers affected by the work in hand are navigable. The Muskingum flows into the Ohio and it, in turn, into the Mississippi, which empties into the Gulf of Mexico, creating a continuous channel over which the commerce of the country passes. The United States had assumed jurisdiction over these rivers long before the present improvement was contemplated and had expended large sums of money on them for the purposes of navigation.

Here the contemplated improvement was one to facilitate and control the flow of water in the streams and was an undertaking for the benefit of the public at large. The enterprise was public in its nature and the work in no respect inured to the benefit of the railroad company. It had its roadbed and tracks and, but for the impounding of the waters, could have continued their use. The relocation of the railroad was but an incident to the principal objects for which the work was being done, to wit, flood control and navigation. Chattanooga & Tennessee R. P. Company v. United States, 6 Cir., 209 F. 28.

█ █ The Congress, in passing the act here in question, recognized the inability of contractors for labor and material to take liens upon the public property of the United States, and further that many of these public works were done upon lands bordering upon or within the waters of navigable rivers, where adjacent, individual owners held title to the land subject to an easement or right reserved in the Government to do whatever was necessary to preserve or promote the public right of navigation and that it was impracticable for laborers and materialmen to assert liens upon such property. In view of the purposes of the act, it is to be given a liberal construction. United States v. Ansonia Brass & Copper Company, 218 U.S. 452, 471, 31 S.Ct. 49, 54 L.Ed. 1107. It is settled law that the United States may enter into contracts for the improvement of navigation and as an incident thereto may provide for the removal and relocation of public utilities interfering with such improvement. Brown v. United States, 263 U.S. 78, 82, 44 S.Ct. 92, 68 L.Ed. 171.

█ As we view the act here in question, it includes (a) work done on property belonging to the United States, (b) all fixed works constructed for public use at the expense of the United States.

The case of Title Guaranty & Trust Company v. Crane Company, 219 U.S. 24, 35, 31 S.Ct. 140, 55 L.Ed. 72, so strongly relied on by appellants, is without point. In that case, the court was considering the applicability of the statute to a contract, to secure which the bond was given, for the construction and delivery of a single screw wooden steamer for the United States. The surety there was attempting to confine the phrase "public work" to structures of permanent nature attached to the soil which was its then understood meaning. The Supreme Court extended the phrase to cover any class of property belonging to the representative of the public whether or not attached to the soil. There is nothing in the opinion from which an inference may be drawn that ownership was the sole criterion. To so circumscribe the act would destroy its purpose. Many of the public works of the United States are on property which the United States is using temporarily. The case of Maiatico Construction Company v. United States, 65 App.D.C. 62, 79 F.2d 418, also relied on by appellants, has no application. In that case, the United States contracted for the erection of three dormitory buildings of the Howard University, a private corporation. The Government had no title or interest in the property and the school was not for public use, although it may have been remotely for public benefit.

In recent years, enormous expenditures for public works have been made partly for the projects themselves as in the case at bar, but mostly to reduce unemployment and to stimulate business. However, there

is no reason why mechanics, laborers and materialmen who do work, or furnish supplies on such projects as fall within the purview of the statute in question, should not have its benefits. In our opinion, the present improvements were "public work" within the meaning of the act, and the bond, the subject of this action, a valid and enforceable obligation.

The issue of estoppel against appellants, by reason of recitals in the bond, is not raised by the pleadings and we do not pass on that question. Judgment affirmed.

SIMONS, Circuit Judge, concurs in result.