## Westinghouse Electric Supply Company v. B.L. Allen, Inc., et al.

[380 A.2d 62]

No. 356-76

Present: **Barney, C.J., Daley, Larrow, Billings, and Hill, JJ.**

Opinion Filed   October 31, 1977

*Harry A. Black* of *Black & Plante*, White River Junction, for Plaintiff.

*Frank G. Mahady*, White River Junction, for Travelers Indemnity Co.

**Billings, J.**   This is an appeal on report of the superior court by agreement of the parties pursuant to V.R.A.P. 5(a). The question of law presented concerns the applicability of the Miller Act, 40 U.S.C.A. § 270a et seq. (1970). Where the Miller Act applies to a cause of action, jurisdiction is vested solely in the federal district court. *Id.* § 270b(b). We hold that the Miller Act does not govern this cause.

The complaint giving rise to this appeal was brought by appellant against B. L. Allen, Inc. (hereinafter Allen) and Traveler's Indemnity Company, appellee, for the price of goods sold and delivered to Allen. Allen was a subcontractor to Granger Contracting Company, Inc. (hereinafter Granger), the general contractor for a Performing Arts Center constructed at Bennington College. At the time it contracted with the college, Granger also entered into a payment bond with appellee as surety in favor of the college. The claim against appellee is founded on this bond.

The Miller Act states that:

(a) Before any contract, exceeding $2,000 in amount, for the construction, alteration, or repair of any public

building or public work of the United States is awarded to any person, such person shall furnish to the United States ...

....

(2) A payment bond with a surety or sureties ... for the protection of all persons supplying labor and material in the prosecution of the work provided for in said contract for the use of each such person....

*Id.* § 270a.

Appellee's claim that the Miller Act applies to this suit rests in the method used to finance the construction of the Performing Arts Center. Bennington College assigned the construction contract with Granger to the Vermont Educational and Health Buildings Financing Agency, which issued bonds to raise money for the construction. The United States Department of Health, Education and Welfare makes an annual grant to the Vermont agency to fund partially the interest due on these bonds. Appellee contends that the federal grant, with its attendant regulations and restrictions pertaining to the Center, makes the Center a "public building or public work of the United States" and brings this case within the ambit of the Miller Act.

The Miller Act does not define the terms "public building or public work of the United States." Therefore, we look to the purposes of the Act for aid in determining whether the construction done in the instant case comes within the Act.

Enacted in 1935, the Miller Act has as a prime purpose the protection of persons supplying labor and materials for the construction of federal buildings. *United States* v. *Carter*, 353 U.S. 210 (1957); *United States* v. *H.R. Morgan, Inc.*, 542 F.2d 262 (5th Cir. 1976), *cert. denied*, 98 S. Ct. 106 (1977) (unrelated issues); *United States* v. *Mattingly Bridge Co.*, 344 F.Supp. 459 (W.D. Ky. 1972). "The essence of its policy is to provide a surety who, by force of the Act, must make good the obligations of a defaulting contractor to his suppliers of labor and material." *United States* v. *Carter, supra*, 353 U.S. at 216-17. The protection afforded by the Act is necessary because suppliers of labor and material for federal buildings cannot acquire a lien on the property of the United States. *United States* v. *H.R. Morgan, Inc., supra*.

A second purpose of Miller Act bonds is "to protect the United States from suits rested upon its equitable duty to ensure that subcontractors and suppliers of materials receive payment." *Id.*, 542 F.2d at 265; see *Kennedy Electric Co.* v. *United States Postal Service*, 508 F.2d 954 (10th Cir. 1974). *United States* v. *Irwin*, 316 U.S. 23 (1942), cited by appellee, is illustrative of this purpose. There, the United States contracted for the construction of a library at Howard University and provided the funds necessary for the project. The Miller Act bonds in *Irwin* served to insure that no equitable actions for payment were brought by subcontractors and materialmen against the federal government. See *Kennedy Electric Co.* v. *United States Postal Service, supra.* The Capehart Housing cases also cited by appellee, *e.g., Autrey* v. *Williams & Dunlap*, 343 F.2d 730 (5th Cir. 1965), where the lands on which construction took place were in private hands and passed to the government immediately upon completion, facilitating the congressional financing scheme for military housing, are other examples recognizing this purpose of the Miller Act. See *United States* v. *H.R. Morgan, Inc., supra.*

Here, neither purpose of the Act is advanced by terming the Performing Arts Center a public building or public work of the United States. The Arts Center is not owned by the United States; federal governmental immunity is no bar to a lien by materialmen and subcontractors here. Also, the United States has provided no funds for the Performing Arts Center project that could be reached by a subcontractor or materialman on an equitable lien theory. See *Kennedy Electric Co.* v. *United States Postal Service, supra.*

As two federal courts have recently pointed out, more than federal funding is necessary to invoke Miller Act jurisdiction. *United States* v. *H.R. Morgan, Inc., supra; United States* v. *Mattingly Bridge Co., supra.* Where the funding is limited to interest only, the federal involvement is far too attenuated to be within the scope and purpose of the Miller Act. The action below is properly brought in the superior court, and the reported question, *i.e.*, does this cause of action fall within 40 U.S.C.A. § 270a, et seq., must be answered in the negative.

*Question reported by agreement of the parties is answered in the negative and cause remanded.*