**Henry McNEIL, Jr., Appellant,**

**v.**

**Barbara McNeil JORDAN and Henry A. Jordan, Appellees.**

Superior Court of Pennsylvania.

Argued Sept. 11, 2002.

Filed Dec. 20, 2002.

---

James F. Mannion, King of Prussia and Patrick J. O'Connor, Philadelphia, for appellant.

William T. Hangley, Philadelphia, for appellee.

Before: McEWEN, P.J.E., FORD ELLIOTT and POPOVICH, JJ.

OPINION BY POPOVICH, J.

¶ 1 Henry McNeil, Jr., (Appellant) appeals from the January 23, 2002, order of the Montgomery County Court of Common Pleas, dismissing, with prejudice, his Complaint against his sister, Barbara

McNeil Jordan, and her husband, Henry A. Jordan (Appellees). Upon review, we affirm.

¶ 2 The facts provided by the trial court are as follows:

Plaintiff, Henry[,] Jr., and defendant, Barbara McNeil Jordan, are the children of Henry S. McNeil, Sr. ("Henry, Sr.") and Lois Fernley McNeil ("Mrs. McNeil"). There were two other children, Marjorie McNeil Findlay, and Robert Douglas McNeil, who are not parties to this action. Henry, Sr. was a prominent figure in the pharmaceutical industry and was President of McNeil Laboratories, Inc., the maker of Tylenol and other medicines. In 1959, McNeil Labs was sold to Johnson & Johnson for common stock worth approximately $33,000,000.

During the 1970s, undefined disagreements between Henry, Jr. and his parents over career and personal issues caused friction in the family relationship. The Complaint alleges that by early 1983 the issues that had led to the friction between Henry, Jr. and his parents had been resolved and Henry, Sr. and Henry, Jr. had made progress in their relationship and were poised for the reconciliation both desired. Henry, Sr. died on May 2, 1983 before this reconciliation was completed. Henry, Sr.'s Will dated August 6, 1979 and the Codicils thereto dated September 18, 1980, April 24, 1981, April 9, 1982 and October 10, 1982 were probated by the Register of Wills of Montgomery County, Pennsylvania. The Will made no provision for Henry, Jr., stating that Henry, Sr. had "amply provided for him otherwise."

The bulk of Henry, Sr.'s estate funded a marital trust for Mrs. McNeil. The marital trust provided that upon Mrs. McNeil's death, the funds would pass to separate trusts for the three other children and their respective families. Mrs. McNeil had a general power of appointment over the entire marital trust and could change this disposition. The Complaint alleges that Mrs. McNeil was aware that she possessed the power of appointment and that she could give Henry, Jr. and his family an equal share of the marital trust and her estate.

On December 21, 1989, Mrs. McNeil executed a Will and subsequently executed three Codicils dated March 21, 1990, December 2, 1992 and September 17, 1997. The Will provides that each of Mrs. McNeil's four children are to receive an outright gift of $500,000. There is a trust of $1,500,000 created in the Will for Plaintiff, Henry, Jr. The Will exercises the power of appointment by providing for numerous pecuniary gifts and modifies the provisions of the marital trust relating to the three included children of Mrs. McNeil. It does not give Henry, Jr. a share of the marital trust nor a share of her residuary estate. Mrs. McNeil's Codicil dated September 17, 1997 changes the $1,500,000 trust for Henry, Jr. to an outright gift.

Trial Court Opinion, 7/11/2000, at 2–3.[1]

¶ 3 Thereafter, Appellant filed a Complaint against Appellees alleging separate causes of action, including intentional interference with testamentary expectancy, *i.e.*, that Appellees interfered with Mrs. McNeil's intention to treat Appellant and his family equally in her estate planning documents.[2]

---

1. The Complaint estimated the family wealth to be in excess of six-hundred-fifty million dollars ($650,000,000.00). *See* Complaint, paragraph 1.

2. This tort is sometimes referred to as "Intentional Interference with an Inheritance." Both of these labels are used in this Opinion to identify the tort.

¶ 4 Appellees filed preliminary objections in opposition to the Complaint. The trial court denied all but one of the preliminary objections and held that Appellant failed to set forth sufficient allegations in the Complaint that Mrs. McNeil intended to change her Will in order to give Appellant a share of her estate and the Marital Trust equal to that of his siblings. *See* Trial Court Opinion, 7/11/00, at 8. Accordingly, the trial court dismissed the Complaint without prejudice, and Appellant was granted leave to file an Amended Complaint within thirty days. *See* Trial Court Order, 7/11/00, paragraphs 2 & 4.

¶ 5 Appellant filed a "Motion for Leave to Conduct Certain Discovery to Aid in Preparation of Amended Complaint." Appellees objected to the discovery request. On January 8, 2002, the trial court determined that Appellant sought pre-complaint discovery in order to establish a basic element of the cause of action, *i.e.,* Mrs. McNeil's intent to change her Will to benefit Appellant and, therefore, dismissed the motion. *See* Trial Court Opinion and Order, 1/8/02, at 8. Appellant advised the trial court and Appellees that he would not amend his Complaint in the absence of discovery sought by the amended discovery motion, and the trial court dismissed the action with prejudice. *See* Trial Court Order, 1/23/02. Thereafter, Appellant filed this timely appeal. Appellant was not ordered to file a Pa.R.A.P. 1925(b) Concise Statement of Matters Complained of on Appeal.

¶ 6 Appellant raised the following two issues on appeal:

(1) Did the trial court err when it ruled that Appellant Henry S. McNeil Jr. had not pled with sufficiently [sic] specificity his mother's intent to leave him an inheritance equal to that of his siblings?

(2) Did the trial court err when it refused Appellant Henry S. McNeil Jr.'s request for pre-complaint discovery of non-privileged documents to which the Jordans and their counsel had unfettered access and which directly related to the element for which the trial court imposed a heightened pleading standard?

Appellant's brief, at 4.

¶ 7 Appellant alleges first that the trial court erred when it ruled that Appellant had not pleaded with sufficient specificity Mrs. McNeil's intent to leave him an inheritance equal to that of his siblings. Relevant hereto, the trial court found that the Complaint adequately set forth sufficient allegations regarding all elements of the tort except for the allegation relating to Mrs. McNeil's intent. *See* Trial Court Opinion, 7/11/00, at 8.

¶ 8 Appellant alleges that the trial court relied upon Pa.R.Civ.P. 1028(a)(3), "insufficient specificity of a pleading," in granting the preliminary objection. Appellees allege that the trial court granted their preliminary objection on the grounds of legal insufficiency (demurrer), pursuant to Pa.R.Civ.P. 1028(a)(4). Therefore, we must decide first on what ground the trial court granted the preliminary objection that lead to the dismissal of the Complaint.

¶ 9 Regarding Pa.R.Civ.P. 1028(a)(3), in *Ammlung v. City of Chester,* 224 Pa.Super. 47, 302 A.2d 491, 498 n. 36 (1973) (quoting 1 *Goodrich–Amram* § 1017(b)–9), we noted:

The . . . question under Rule [1028(a)(3) ] [3] is "whether the complaint is sufficiently clear to enable the defendant to prepare his defense," or "wheth-

---

**3.** The case refers to Pa.R.Civ.P. 1017(b)(3). This rule was rescinded and the note following the section refers readers to Pa.R.Civ.P. 1028(a).

er the plaintiff's complaint informs the defendant with accuracy and completeness of the specific basis on which recovery is sought so that he may know without question upon what grounds to make his defense."

¶ 10 Regarding Pa.R.Civ.P. 1028(a)(4), we have held, "[A] demurrer is a preliminary objection that the pleadings fail to set forth a cause of action upon which relief can be granted *under any theory of law*." *Sutton v. Miller*, 405 Pa.Super. 213, 592 A.2d 83, 87 (1991) (citation omitted) (emphasis in original). "A demurrer, of course, is an assertion that the complaint does not set forth a cause of action upon which relief can be granted. It admits, for the purpose of testing the sufficiency of the complaint, all properly pleaded facts, but not conclusions of law." *Balsbaugh v. Rowland*, 447 Pa. 423, 426, 290 A.2d 85, 87 (1972) (citations omitted).

¶ 11 Appellees filed preliminary objections to Appellant's Complaint, including a preliminary objection that it labeled a demurrer. *See* Preliminary Objections, at 8, no. 4. Appellees alleged that the Complaint failed to allege adequately the elements of the tort of intentional interference with an inheritance. *See id.* at paragraphs 30–33. The trial court agreed with this assertion, granted the demurrer and dismissed the Complaint.

¶ 12 Based upon the wording of the preliminary objection and the trial court's opinion granting it, we find that the trial court addressed properly the preliminary objection in terms of demurrer, or legal insufficiency. Accordingly, we will interpret Appellant's first issue to allege that the trial court erred in finding the Complaint to be *legally* insufficient.

¶ 13 In *Cardenas v. Schober*, 783 A.2d 317, 321 (Pa.Super.2001), *appeal at 385 MAL 2001 denied, appeal at 836 MAL 2001 granted*, 568 Pa. 713, 797 A.2d 909 (2002), we held:

> Our standard of review for an order granting a preliminary objection in the nature of a demurrer is as follows: All material facts set forth in the pleading at issue as well as all inferences reasonably deductible therefrom are admitted as true. The question presented by the demurrer is whether, on the facts averred, the law says with certainty that no recovery is possible. Where a doubt exists as to whether a demurrer should be sustained, this doubt should be resolved in favor of overruling it. *Corestates Bank, Nat'l Assn. v. Cutillo*, 1999 PA Super 14, 723 A.2d 1053, 1057 (Pa.Super.1999) (citation omitted). When reviewing a grant of demurrer, we are bound neither by the inferences drawn by the trial court, nor by its conclusions of law. *Id.* at 1057. Our scope of review is plenary. *Id.*

¶ 14 Our main inquiry is whether Plaintiff set forth a cause of action for intentional interference with an inheritance. The elements of the tort are:

(1) The testator indicated an intent to change his will to provide a described benefit for plaintiff,

(2) The defendant used fraud, misrepresentation or undue influence to prevent execution of the intended will,

(3) The defendant was successful in preventing the execution of a new will; and

(4) But for the Defendant's conduct, the testator would have changed his will.

*Cardenas*, 783 A.2d at 326 (citing *Marshall v. DeHaven*, 209 Pa. 187, 58 A. 141 (1904)). Appellees allege, as the trial court found, that Appellant failed to allege sufficiently Mrs. McNeil's intent to change her Will to provide an inheritance for Appellant from

her estate and the Marital Trust equal to that of his siblings.[4]

¶ 15 In *Cardenas*, we examined whether the appellants alleged sufficient facts to support their claim that the decedent indicated an intent to change her Will to provide a benefit for the appellants. *Cardenas*, 783 A.2d at 326. The complaint alleged that the decedent attempted to execute another Will or codicil after executing her original Will in order to make specific bequests to the appellants. *Id.* at 326. The appellants alleged that they could prove that the decedent authored various documents indicating her intent to make such bequests. The appellants alleged that the decedent intended for the documents to become part of her Will or its codicils. Thus, the appellants alleged that the decedent had taken specific steps towards leaving them more money and property such that they had a tangible basis for an expectancy. We found that these factual allegations supported the appellants' claim that the decedent "indicated an intent to change her will to provide a described benefit for appellants." *Id.* at 326.

¶ 16 In this case, the Complaint included general allegations that shortly after Mr. McNeil's death, Mrs. McNeil expressed an intention to leave Appellant an equal share of her estate and the Marital Trust if Appellant reestablished a positive relationship with her, that Appellant established a positive relationship with Mrs. McNeil prior to her death and that Mrs. McNeil decided to treat Appellant equally with his siblings in her Will and took steps to do so but was unsuccessful because she was impeded by Appellees' actions. *See* Complaint, paragraphs 21 & 22. The Complaint asserts that Mrs. McNeil believed that her Will treated Appellant and his family equally but that her belief was mistaken because the language of the Will was confusing. *See* Complaint, paragraphs 21, 22, 53 & 88.

¶ 17 Unlike the amended complaint in *Cardenas*, Appellant's Complaint fails to plead any other facts concerning Mrs. McNeil's intent to change her Will or the actions she took to attempt to make Appellant a beneficiary equal to that of his siblings.

¶ 18 We find the sections of the Complaint cited by Appellant in support of his argument that he alleged facts demonstrating sufficiently Mrs. McNeil's intent are not persuasive. For example, Appellant argues that the Complaint alleges that one of the codicils to the 1989 Will specifically referred to Appellant and changed a former bequest in trust to him to an outright bequest to him. *See* Complaint, paragraph 64. This fact merely demonstrates that Mrs. McNeil intended to modify this provision of her Will affecting Appellant and did so to his benefit. Appellant also cites instances in the Complaint where Appellant and his siblings were treated equally in the Will to demonstrate that Mrs. McNeil intended to treat him equally in all aspects of her Will.

---

4. In *Cardenas*, we recognized that our Pennsylvania courts have rarely had an opportunity to address this tort. *Cardenas*, 783 A.2d at 325. *Cardenas* cited earlier decisions of our Supreme Court in which this tort has been addressed or alluded to. *See Marshall v. DeHaven*, 209 Pa. 187, 58 A. 141 (1904), *Mangold v. Neuman*, 371 Pa. 496, 91 A.2d 904 (1952), and *Cole v. Wells*, 406 Pa. 81, 177 A.2d 77 (1962). *Cardenas* also cited The Restatement (Second) of Torts § 744B ("Intentional Interference with Inheritance or Gift") which recognizes this tort. *Cardenas* noted that eleven states had adopted § 744B of the Restatement, but that Pennsylvania had not. Instead, we, like at least four other states, "permit an action for intentional interference with an inheritance," without having adopted the Restatement. *Id.* at 325.

However, none of the examples demonstrate Mrs. McNeil's intent to treat Appellant equally concerning all aspects of her estate and the Marital Trust. We agree with the trial court that the only clear assertion in the Complaint of Mrs. McNeil's intent to change her Will to benefit Appellant was the allegation of Mrs. McNeil's conditional statement that if her relationship with Appellant improved, then she would adjust her Will to leave Appellant an equal share of her estate and the Marital Trust. *See* Complaint, paragraph 22. Like the trial court, we find that the conditional statement was not a sufficient statement of intent to support a valid expectancy on the part of Appellant. *See* Trial Court Opinion, 7/11/00, at 8–9. Accordingly, we find no sufficient allegations in the Complaint relating to Mrs. McNeil's intent to change her Will to give Appellant a share of her estate and the Marital Trust equal to that of his siblings.

¶ 19 Appellant's arguments to the contrary fail. We do not interpret the Trial Court Opinion to require that Appellant must have personal knowledge such that he heard Mrs. McNeil say that she intended to change her Will to further benefit Appellant or that he saw her attempt to change her Will to further benefit Appellant. Instead, Appellant's allegations may be based upon information and belief. *See* Pa.R.Civ.P. 1024(a) ("[e]very pleading containing an averment of fact . . . shall state that the averment or denial is true upon the signer's personal knowledge *or* information and belief") (emphasis added). Appellant's beliefs are clear. However, the information supporting his beliefs is absent from the Complaint. Therefore, this argument fails.

¶ 20 Appellant argues that Appellees' tortious acts made it impossible to prove with certainty all of the elements of the tort and that the trial court failed to take this fact into account. Appellant alleged in the Complaint that Appellees controlled Mrs. McNeil's day-to-day affairs and environment and took advantage of her frailties in order to exert control over her financial affairs and decisions affecting Appellant. *See* Complaint, paragraphs 26 & 28.

¶ 21 Appellant was not required to prove Mrs. McNeil's intent with certainty. However, Appellant failed to reasonably allege the existence of such an intent *at all*. Therefore, this argument fails.

¶ 22 Appellant argues that his allegations in his amended discovery motion demonstrate that he has stated a claim. Appellant's brief, at 23. In reviewing a demurrer, we will not consider testimony or evidence outside the complaint. Therefore, this argument fails.[5] *See Cardenas*, 783 A.2d at 322 (citation omitted).

¶ 23 Appellant argues that Pa.R.Civ.P. 1019(b) allows for intent and knowledge to be averred generally, and, therefore, he

---

**5.** The three averments were:
   (1) During the mid–1990's, following a discussion with a former Drinker lawyer with knowledge of Mrs. McNeil's estate plan, Mr. McNeil understood that he would be treated equally in the Will;
   (2) Mr. McNeil was informed that one or more of his siblings had discussions with his mother in the early to mid 1990's wherein they encouraged Mrs. McNeil to treat her son Mr. McNeil and his family equally; and

   (3) Mr. McNeil was informed that, in the early to mid–1990's, one of his siblings indicated that, in fact, his mother had included Mr. McNeil in the Will of "his portion" of the family wealth.
*See* amended discovery request, paragraph 25. Even if we were to consider any of the three averments separately or in total, we would find that they did not provide the sufficiency required.

need not allege Mrs. McNeil's intent with specificity. Appellant argues that a similar tenet is that trial courts are not to weigh evidence at the preliminary objection stage. Appellant's arguments are misplaced. We reiterate that Appellant has failed to state any reasonable basis for his beliefs that Mrs. McNeil intended to change her Will to benefit him, and, therefore, this argument fails.

¶ 24 Appellant argues that the trial court resolved all doubts in favor of Appellees instead of Appellant, in violation of general preliminary objection standards. *See Baker v. Cambridge Chase, Inc.*, 725 A.2d 757, 764 (Pa.Super.1999). As our review is plenary, this argument has no merit.

■ ¶ 25 Appellant argues that he had "probable cause" for instituting the litigation. The trial court disagreed and cited 42 Pa.C.S.A. § 8352. *See* Trial Court Opinion and Order, 1/8/02, at 8. Section 8352 provides that probable cause requires, among other things, a reasonable belief "in the existence of the facts upon which the claim is based[.]" Appellant failed to prove that his belief was objectively reasonable, and, therefore, this claim fails. *Cf. Bannar v. Miller*, 701 A.2d 232, 238 (Pa.Super.1997) (finding claims raised by appellant not objectively reasonable).

¶ 26 As we have rejected all of Appellant's arguments concerning his first issue, we affirm the trial court's decision granting the preliminary objection in the nature of a demurrer and dismissing the Complaint.

■ ¶ 27 In his second issue, Appellant contends that the trial court erred when it denied Appellant's amended discovery motion. Discovery matters are within the discretion of the trial court, and, therefore, we employ an abuse of discretion standard of review. *See Luszczynski v. Bradley*, 729 A.2d 83, 87 (Pa.Super.1999).

¶ 28 By way of history, Appellant filed various discovery requests after the filing of the Complaint and prior to the trial court's order granting the preliminary objection. Among the discovery requests filed, Appellant filed a Notice of Intent to serve subpoenas upon third parties, including Drinker, Biddle & Reath, LLP (hereinafter "the Drinker firm") (Mrs. McNeil's estate attorneys), pursuant to Pa. R.Civ.P. 4009.21. Appellees objected to the discovery requests. The trial court denied Appellant's motion to overrule Appellees' objections to the issuance of the third party subpoena to the Drinker firm without prejudice to reassert the motion after the trial court's ruling upon the preliminary objections. After receiving the trial court's order granting Appellees' preliminary objection and dismissing the Complaint, Appellant filed a "Motion for Leave to Conduct Certain Discovery to Aid in Preparation of Amended Complaint," wherein Appellant requested the following records from Appellees and the Drinker firm for the time period January 1, 1983, through Mrs. McNeil's death on March 4, 1998:

(a) All documents concerning, referring or relating to any Wills, codicils, or testamentary writings executed by, or prepared for the consideration of, Lois F. McNeil;

(b) All memoranda, correspondence, charts, outlines, diagrams, exhibits or computer files depicting the predicted or anticipated distribution upon Lois F. McNeil's death of (a) assets held in the Marital Trust under Will of Henry S. McNeil, Sr., or (b) assets in the name of Lois F. McNeil or her anticipated estate;

(c) All memoranda, correspondence, charts, outlines, diagrams, exhibits

or computer files depicting the predicted or anticipated payment of death taxes upon Lois F. McNeil's death;

(d) All documents concerning, referring or relating to Plaintiff; and

(e) All billing records concerning, referring or relating to legal services rendered to Lois F. McNeil with respect to her estate planning.

Appellant's discovery motion, 8/27/00, at paragraph 13, and Appellant's amended discovery motion, 5/18/01, paragraph 27.

¶ 29 Appellees objected to the motion. Appellant subsequently filed an amended discovery motion requesting the same documents to which Appellees again objected. The trial court provided for discovery as follows:

[T]he Court attempted to broker a compromise where Mr. McNeil, Jr.'s attorneys could have unlimited access to Mrs. McNeil's estate planning files to see if there was any indication in those files that Mrs. McNeil had ever expressed an intent to her attorneys to equalize Mr. McNeil's share. The Court suggested that this review would be for the attorney's eyes only with an understanding that all material reviewed in the file would remain confidential. Before any of the estate planning material could be revealed to their client, copied, or used in litigation, the Court would determine whether the material was relevant to the question of Mrs. McNeil's intent regarding Mr. McNeil, Jr.

Trial Court Opinion and Order, 1/8/02, at 7.[6]

¶ 30 Appellant rejected the trial court's proposal. The trial court then issued an opinion and order on January 8, 2002, refusing to allow Appellant to take discovery in aid of filing an amended complaint and ordered Appellant to file an amended complaint. Appellant informed the trial court that it would not file an amended complaint without the requested discovery. The trial court then issued its January 23, 2002, order deeming the order a final order and dismissing the complaint with prejudice.

¶ 31 In presiding over this case, the trial court took opposite positions in addressing Appellant's discovery motion. On the one hand, the trial court initially permitted discovery, although it limited who could see the documents and how the documents could be used. The trial court imposed such conditions because of the confidential nature of estate planning documents and its concern that "[i]t would be unfair not only to Lois McNeil, but to all of the other people whose confidential estate planning papers would then, as a matter of legal precedent, also be available to disgruntled heirs searching for a reason to sue where none exists." *See* Trial Court Opinion and Order, 1/8/02, at 6.

¶ 32 On the other hand, the trial court, relying upon decisions from other Courts of Common Pleas, subsequently found that precomplaint discovery may only be used to fill-in missing facts but may not be used to determine whether a cause of action exists in the first place. The trial court denied Appellant's discovery request because it held that Appellant was attempting to use discovery to determine whether a cause of action existed, *i.e.,* he was attempting to use discovery to determine whether Mrs. McNeil intended for him to

---

**6.** Appellant argues that the trial court initially agreed at oral argument on the discovery motion to allow Appellant discovery of the Drinker firm's estate planning file, before later changing its mind as set forth above. This alleged agreement was not transcribed, and the trial court did not make reference to it in its opinion and order. Accordingly, Appellant's argument is not supported by the record.

inherit an equal portion of her estate and the Marital Trust.

¶ 33 Appellant argues that the trial court erred in failing to permit discovery without the above conditions. Appellant argues that the discovery is necessary in order for him to be able to file a sufficiently specific amended complaint. Therefore, we must first decide whether Appellant was entitled to discovery, and, if he was, whether the trial court abused its discretion in imposing the conditions upon discovery that it did.

¶ 34 Pennsylvania permits the use of discovery to aid in the preparation of pleadings. *See* Pa.R.Civ.P. 4001(c). Appellate decisions have approved the use of precomplaint discovery in order to aid in the drafting of a complaint. *See Lapp v. Titus,* 224 Pa.Super. 150, 302 A.2d 366 (1973). Appellate decisions have not, however, commented upon the limits, if any, to be imposed upon precomplaint discovery. Therefore, we focus our review upon the holdings and comments of some of the Pennsylvania Courts of Common Pleas which have addressed this issue. Unfortunately, the trial courts have come to differing conclusions about this issue. We address the cases we reviewed in chronological order.

¶ 35 First, in *Crown Marketing Equipment v. Provident National Bank,* 3 Pa. D. & C.3d 364 (C.P. Philadelphia 1977), the Philadelphia County Court of Common Pleas recognized that precomplaint discovery is permissible if it is shown that a complaint could not be filed otherwise. *Id.* at 366 (citing *Pustilnik v. SEPTA,* 45 Pa. D. & C.2d 799 (C.P. Philadelphia 1968)).

¶ 36 Next, in *Hall v. Baltic,* 12 Pa. D. & C.3d 647 (C.P. Beaver 1978), the defendant doctor sought a protective order from being compelled to give deposition testimony after the filing of a writ of summons and before the filing of a complaint before he was informed of the precise allegations being brought by the plaintiff. The trial court denied the request for a protective order and held that the defendant was adequately protected by the rule of law that provides that, "if discovery is sought to aid in preparation of the pleadings, the inquirer has the burden of establishing the relevancy of the questions and the fact that they will aid in preparation of the complaint." *Id.* at 648 (citing *Chatinsky v. Dubrow Electronics Industries, Inc.,* 27 Pa. D. & C.2d 486 (C.P. Philadelphia 1962)). The trial court recognized that in a malpractice case discovery in aid of the "pleadings may be essential in order to obtain information from defendant concerning his diagnosis and medical treatment of plaintiff." *Id.* at 648. The trial court held that Pa.R.Civ.P. 4007(a) was designed specifically to authorize this kind of discovery. *Id.* at 648.

¶ 37 In *Wable v. Watkins,* 47 Pa. D. & C.3d 485 (C.P. Somerset 1986), relied upon by the trial court in this case, the defendants filed a writ of summons to join a third party as an additional defendant and sought to depose her prior to filing the complaint; the third party objected. The trial court noted that in prior Pennsylvania cases [7] "precomplaint discovery directed to a person sought to be joined [was] not proper if the purpose [was] to determine whether or not a cause of action, in fact, exist[ed]." *Id.* at 489. The trial court noted that the cases it relied upon were decided under former Pa.R.Civ.P. 4007(a) [8]

---

7. *See Lutsko v. Sawka,* 27 Pa. D. & C.2d 246 (C.P. Lehigh 1962), and *Rosenbaum Co. v. Tomlinson,* 7 Pa. D. & C.2d 500 (C.P. Allegheny 1956).

8. *See* Pa.R.Civ.P. 4007, rescinded November 20, 1978, effective April 16, 1979 (*Note:* The subject matter of former Rule 4007 has been

which required that a precomplaint deposition *substantially* aid in the preparation of the pleadings. The *Wable* court acknowledged that, in the amended rules, the word substantially was deleted and that discovery must be *relevant* to the proceedings under the current rule. *See* Pa.R.Civ.P. 4003.1(a). However, the *Wable* court found that as Rule 4007.1(c) requires that a deposition notice "shall include a brief statement of the nature of the cause of action...," it necessarily follows "precomplaint depositions cannot be used for the purpose of determining whether or not a cause of action exists" as the cause of action must already exist under the rule at the time the deposition is noticed. *Id.* at 490.

¶ 38 In *Anderson v. PennDOT*, 47 Pa. D. & C.3d 429, 431 (C.P. Cumberland 1987), the trial court acknowledged:

There is some authority to support the allowance of precomplaint discovery in certain limited and controlled situations. *See* Goodrich–Amram, 2d Section 4001(C):3. Several courts have suggested that precomplaint discovery may be permitted upon carefully constructed limitations and a showing that without the discovery a complaint could not be drafted. *See Pustilnik v. SEPTA*, 45 D. & C.2d 799 (1968); *Martin v. Hodlofski*, 53 D. & C.2d 144 (1971); *Crown Marketing Equipment Company v. Provident National Bank*, 3 D. & C.3d 364 (1977).

¶ 39 Nonetheless, the trial court denied precomplaint discovery because it held that the plaintiff was able to draft the complaint without it.

¶ 40 In *Potts v. Consolidated Rail Corp.*, 37 Pa. D. & C.4th 196 (C.P. Allegheny 1998), the defendants filed a motion for a protective order from the plaintiff's precomplaint discovery request. The trial court noted that a court order barring discovery until the complaint has been filed furthers the interests of justice for several reasons, to wit:

*First, a defendant should have the opportunity to show that the claims raised in the complaint fail to state a cause of action before responding to discovery involving these claims.*

Second, a party should not be required to engage in discovery until the pleadings containing the averments of fact upon which a plaintiff's claims and a defendant's defenses are based have been filed. Pennsylvania has rejected notice pleading; the purpose of the requirement of the Rules of Civil Procedure that the parties plead material facts is to narrow the factual issues. Thus, the discovery rules should be applied in a manner consistent with these pleading rules that are based on the premise that discovery will be narrowed if the contours of the dispute are initially defined through fact pleading.

Third, Pa.R.C.P. 4003.1 permits a party to obtain discovery of matters relevant to the subject matter involved in a pending action. Until a complaint has been filed that meets the specificity requirements of the Pennsylvania Rules of Civil Procedure, a defendant and a court may not be in a position to determine whether the discovery which the plaintiff seeks involves matters relevant to the subject matter involved in the pending action.

Fourth, prior to the filing of the complaint, a plaintiff's counsel will have had the opportunity to discuss the case with the plaintiff and with witnesses favorable to the plaintiff, to review documents in the control of the plaintiff, and to

transferred to Rules 4001(c), 4003.1, 4007.1 and 4007.2).

consider the legal issues that will govern the litigation. Counsel for the defendant may not have any knowledge of the claim until after the lawsuit is commenced. Consequently, the rules governing discovery should be applied to give a defendant's counsel sufficient time to determine the nature of the dispute before responding to extensive discovery requests.

*Id.* at 200 (emphasis added).

¶ 41 In general, the *Potts* court appears to disfavor generally precomplaint discovery but will permit such discovery if the complaint would be insufficiently specific without it. *Id.* at 201. However, the court's ultimate holding on the facts presented denied precomplaint discovery as the plaintiff failed to meet her burden to prove that discovery was necessary to file her complaint. *Id.* at 204. The trial court did not indicate specifically whether or not it would allow precomplaint discovery to determine whether an element of a cause of action existed. However, the trial court's reasoning appears to disfavor such practice.

¶ 42 In *Vartan Enterprises, Inc. v. Susquehanna Township*, 41 Pa. D. & C.4th 534 (C.P. Dauphin 1998), the plaintiffs filed a writ of summons and requested precomplaint discovery in a case involving a building permit. The trial court opinion quotes from the plaintiff's brief in support of discovery as follows:

[P]laintiffs believe defendants have tortiously interfered with contractual, civil and legal rights and have conspired to otherwise violate the law. Plaintiffs required discovery in order to prepare a proper complaint to determine who participated in the permit revocation, the motivations associated with the revoca-

tion, and the procedures by which the revocation came about.

*Id.* at 536–37.

¶ 43 The trial court cited Pa.R.Civ.P. 4001(c) (providing for use of discovery to prepare pleadings), 4009.11(a) (providing for issuance of discovery requests with or after service of original process), 4003.1(a) (providing for discovery of any matter, not privileged, relevant to subject matter involved in pending action), and 4012 (providing for protective orders from discovery for good cause shown). The trial court found that the defendants' objections did not set forth a valid reason to deny the discovery request. *Id.* at 537–38. Relevant hereto, the trial court held, "[P]laintiffs deny they have all information necessary to specifically identify all proper causes of action and to identify all specific parties responsible for injuring plaintiffs." *Id.* at 538. The trial court permitted discovery. Therefore, *Vartan* appears to permit discovery that *Wable* and *Potts* does not, *i.e.,* "information necessary to specifically identify all proper causes of action."

¶ 44 We are more persuaded by the caselaw setting reasonable limits on precomplaint discovery than the caselaw permitting a more liberal allowance of discovery. To hold otherwise would be to make real the fear expressed by the trial court stated earlier and shared by this Court that disgruntled heirs could scrutinize a person's confidential estate planning documents searching for a reason to sue where none exists. *See* Trial Court Opinion and Order, 1/8/02, at 6.

¶ 45 The holding in *Evans Estate*, 15 Pa. D. & C.2d 619 (C.P. Luzerne 1958), cited by the trial court, supports this position. In *Evans Estate*, a case involving a will contest, the trial court held:

[a plaintiff] must have a prima facie case in the first instance, and then call upon these [discovery] rules to assist them in

obtaining particular facts, such as 'the identity and whereabouts of witnesses' [. . .] Depositions may only 'aid in the preparation of pleadings,' not determine whether pleadings shall be prepared in the first instance.

*Id.* at 628.

¶ 46 Based upon the above, we hold that precomplaint discovery is permissible if it is shown that, one, the plaintiff has set forth a *prima facie* case, and, two, the plaintiff cannot prepare and file a complaint otherwise. *Cf. Wable* and *Evans Estate.*

¶ 47 As we have found previously that Appellant failed to set forth a *prima facie* case, Appellant does not meet the requirements for seeking precomplaint discovery. We find that to grant Appellant's discovery request would amount to authorizing the proverbial "fishing expedition." *Cf. Land v. State Farm Mutual Ins. Co.*, 410 Pa.Super. 579, 600 A.2d 605, 608 (1991) ("While discovery should be liberally allowed, 'fishing expeditions' are not to be countenanced under the guise of discovery") (citation omitted). We have addressed Appellant's arguments to the contrary in the above discussion and find none of them to have merit. Therefore, we find that the trial court did not abuse its discretion in denying Appellant's discovery request.[9]

¶ 48 Order affirmed.

---

9.   As we have found that the trial court did not abuse its discretion in denying Appellant's discovery request, we need not address whether the trial court abused its discretion in imposing its initial conditions upon discovery.