REGAL INDUSTRIAL
CORPORATION,
Appellant,

v.

CRUM AND FORSTER, INC., United States Fire Insurance Company and The North River Insurance Company, Appellees.

Superior Court of Pennsylvania.

Argued June 15, 2005.

Filed Dec. 20, 2005.

Craig L. Fishman, Pittsburgh, for Regal Industrial Corp., appellant.

M. Faith McGarrity, Morristown, N.J., for The North River Insurance Co., appellee.

Matthew C. Collins, Pittsburgh, for United States Fire Insurance Co., appellee.

BEFORE: DEL SOLE, P.J., TODD and PANELLA, JJ.

OPINION BY DEL SOLE, P.J.:

¶ 1 This is an appeal from the trial court order granting Appellees' preliminary objections and dismissing Appellant's complaint with prejudice. Appellant contends that the trial court erred in concluding that Appellant's claims were governed by 40 U.S.C.S. § 3131, et seq. ("The Miller Act"), which grants exclusive jurisdiction over this matter to the federal courts. Finding no error on the part of the trial court, we affirm.

¶ 2 Wilhelm and Kruse, Inc. ("Wilhelm") entered into a contract ("Wilhelm contract") with the United States Army Corps of Engineers to design, construct, test and deliver four inland river style barges for the Ace Inland Barge Project ("the project"). The contract required Wilhelm to provide a performance bond and a payment bond to secure performance of the work and payment for labor and supplies. Wilhelm supplied the bonds with Appellees Crum and Forster, Inc., United States Fire Insurance Company ("U.S.Fire"), and the North River Insurance Company as the sureties on the bonds. The payment bond named Wilhelm as the principal and U.S. Fire as the surety, but stated that the bond ran in favor of the United States of America. The payment bond also identified the Wilhelm contract as the contract upon which the bond was issued.

¶ 3 In August 2000, Appellant Regal Industrial Corporation entered into a subcontract with Wilhelm to provide industrial painting services for the project. By the terms of the subcontract, Appellant was to provide, among other things, labor, equipment and material to blast and paint four barges for the United States Army Corps of Engineers. Wilhelm subsequently declared bankruptcy and pursuant to an order of the bankruptcy court, Hiller Barge Company ("Hiller") assumed Wilhelm's rights, duties and liabilities under the project. Appellees remained the sureties of the project.

¶ 4 The dispute at issue in this case began when Hiller failed to pay several invoices submitted to it by Appellant. On January 29, 2002, Appellees sent a letter informing Appellant that U.S. Fire was the bonding company for the project and would guarantee payment on invoices submitted for materials and labor. Appellant continued to provide Hiller with materials and labor and sent invoices reflecting the amount owed for the work it had provided. Hiller filed for bankruptcy on May 1, 2002. Appellant filed a Proof of Claim with the United States Bankruptcy Court on November 6, 2002, seeking payment pursuant to the bond. Appellant's requests for payment were never met. Appellant initiated the present action against Appellees on September 10, 2004, in the Court of Common Pleas of Allegheny County. Count 1 of Appellant's complaint set forth a claim based on a breach of the "Construction Bond" and Count 2 set forth a claim for fraud.

¶ 5 In response, Appellees filed preliminary objections. Before these objections were ruled on, Appellant filed an amended complaint renaming Count 1 "Payment Bond for Other than Construction Contract," and adding a claim based on promissory estoppel. Appellees again responded with preliminary objections asserting that the trial court lacked subject matter jurisdiction to consider Count 1 of the

complaint because the bond upon which Appellant's claim was based was governed by the Miller Act. The preliminary objections also asserted that Appellant failed to state a legally sufficient claim for fraud or promissory estoppel.

¶ 6 Finding Appellant's claims governed by the Miller Act, the trial court granted Appellees' preliminary objections and dismissed Appellant's complaint with prejudice for lack of subject matter jurisdiction. This appeal followed.

¶ 7 Before reviewing the trial court's finding that it lacked subject matter jurisdiction pursuant to the Miller Act, we must address Appellant's contention that Appellees wrongly attached a copy of the payment bond to their preliminary objections and impermissibly set forth their interpretations of the bond. Appellant maintains that these actions constituted a "speaking demurrer" which should not have been considered by the trial court.

¶ 8 Appellant first claims that Appellees impermissibly attached a copy of the payment bond to their preliminary objections. Appellant argues that it "did not previously possess [the payment bond], so a factual dispute exists as to its authenticity." Appellant's Brief at 23. We first note that Appellant did not raise the question of the bond's authenticity with the trial court. Further, Appellant has not provided any argument in support of this assertion and points to no language in the bond as being inaccurate.

¶ 9 Next, Appellant contends that even if the attachment of the bond was proper, Appellees' preliminary objections contained an impermissible interpretation of that bond which amounted to a "speaking demurrer."

■ ¶ 10 "A demurrer is a preliminary objection that the pleadings fail to set forth a cause of action upon which relief can be granted under any theory of law." *McNeil v. Jordan*, 814 A.2d 234, 238 (Pa.Super.2002). A "speaking demurrer" is defined as "one which, in order to sustain itself, requires the aid of a fact not appearing on the face of the pleading objected to, or, in other words, which alleges or assumes the existence of a fact not already pleaded, and which constitutes the ground of objection and is condemned both by the common law and the code system of pleading." BLACK'S LAW DICTIONARY 299 (6th ed.1991). A "speaking demurrer" cannot be considered in sustaining a preliminary objection.

■ ¶ 11 Appellant claims the following two statements contained in Appellees' preliminary objections amounted to a "speaking demurrer" and as such should not have been considered by the trial court:

1. [Appellant's] work was in connection with a federal public works project; and

2. [Appellant's] work was a part of a federal project to design and construct vessels owned by the United States Army Corp. of Engineers.

Appellant's Brief at 24.

Appellant argues that without considering these two statements, the trial court could not have concluded that the bond was governed by the Miller Act. We disagree.

¶ 12 Although the statements cited by Appellant may be considered legal argument and opinion, the trial court was not bound to consider them. Moreover, we find that even disregarding the alleged "speaking demurrer," there is sufficient additional information from which the trial court could conclude that Appellant's claim was governed by the Miller Act. Appellant's cause of action was predicated on the payment bond that was issued in conjunction with the Wilhelm contract. Although

these documents were not attached to the complaint, each was referenced therein. Appellees properly annexed documents related to the bond and the contract to their preliminary objections for the trial court's consideration. *See Eckell v. Wilson,* 409 Pa.Super. 132, 597 A.2d 696, 699 (1991) (holding a defendant may attach a copy of a written agreement where the plaintiff alleges an agreement based on a writing). Thus, even if we disregard the cited preliminary objections, there is sufficient information found on the face of the properly attached documents from which the trial court could properly conclude that Appellant's work was in connection with a federal works project and was therefore governed by the Miller Act. *See* discussion *infra.* Therefore, we find no error in the trial court's ruling.

■ ¶ 13 Appellant next argues that the trial court erred in finding that it lacked subject matter jurisdiction pursuant to the Miller Act. Appellant contends that the payment bond should not be governed by the Miller Act because it is not a construction bond and does not involve a public work within the meaning of the Miller Act.

¶ 14 In pertinent part, the Miller Act provides the following:

§ 3131. Bonds of contractors of public buildings or works

(b) Type of bonds required. Before any contract of more than $ 100,000 is awarded for the construction, alteration, or repair of any public building or public work of the Federal Government, a person must furnish to the Government the following bonds, which become binding when the contract is awarded:

(1) Performance bond. A performance bond with a surety satisfactory to the officer awarding the contract, and in an amount the officer considers adequate, for the protection of the Government.

(2) Payment bond. A payment bond with a surety satisfactory to the officer for the protection of all persons supplying labor and material in carrying out the work provided for in the contract for the use of each person. The amount of the payment bond shall equal the total amount payable by the terms of the contract unless the officer awarding the contract determines, in a writing supported by specific findings, that a payment bond in that amount is impractical, in which case the contracting officer shall set the amount of the payment bond. The amount of the payment bond shall not be less than the amount of the performance bond.

40 U.S.C.S. § 3131.

¶ 15 The Miller Act further provides:

§ 3133. Rights of persons furnishing labor or material

(b) Right to bring a civil action.

(1) In general. Every person that has furnished labor or material in carrying out work provided for in a contract for which a payment bond is furnished under section 3131 of this title and that has not been paid in full within 90 days after the day on which the person did or performed the last of the labor or furnished or supplied the material for which the claim is made may bring a civil action on the payment bond for the amount unpaid at the time the civil action is brought and may prosecute the action to final execution and judgment for the amount due.

. . .

(3) Venue. A civil action brought under this subsection must be brought-

(A) in the name of the United States for the use of the person bringing the action; and

(B) in the United States District court for any district in which the contract was to be performed and executed regardless of the amount in controversy.

(4) Period on which action must be brought. An action brought under this subsection must be brought no later than one year after the day on which the last of the labor was performed or material was supplied by the person bringing the action.

40 U.S.C.S. § 3133.

¶ 16 The Miller Act was passed to protect subcontractors who supply material and labor for public works of the United States.[1] The essence of the Miller Act "is to provide a surety who, by force of the Miller Act, must make good the obligations of a defaulting contractor to his suppliers of labor and material. The protection afforded by the Act is necessary because suppliers of labor and material for federal buildings cannot acquire a lien on the property of the United States." *Westinghouse Elec. Supply. Co. v. B.L. Allen, Inc.,* 135 Vt. 488, 380 A.2d 62, 63 (1977) (citation omitted). In addition, the Miller Act protects the United States from suits by ensuring that subcontractors and suppliers of materials receive payment. *Id.* To further these purposes, the United States Supreme Court has stated that the Miller Act is "entitled to a liberal construction and application in order properly to effectuate the Congressional intent to protect those whose labor and materials go into public projects." *Clifford F. MacEvoy Co. v. United States,* 322 U.S. 102, 107, 64 S.Ct. 890, 88 L.Ed. 1163 (1944).

¶ 17 Appellant first alleges that the Miller Act only applies to construction bonds and because the bond upon which it is suing is entitled "Payment Bond for Other than Construction Contracts" it therefore falls outside the scope of the Miller Act. We disagree.

■ ¶ 18 The applicability of the Miller Act is not determined by the title given the payment bond. To determine whether the Miller Act applies, the dispositive issue is whether the underlying contract for which the payment bond was issued is for the "construction, alteration, or repair of any public building or public work of the Federal Government." *See* 40 U.S.C.S. § 3131(b). The underlying contract between Wilhelm and the United States Army Corps of Engineers provided that Wilhelm was to "design, construct, test, and deliver" four inland river style barges. *See* United States Army Corps of Engineers' Solicitation No. DACW61–99–B–0028, June 1999 (emphasis added). The payment bond upon which Appellant's claims are predicated was issued pursuant to that contract. Thus, the bond was clearly issued to insure payment on a construction contract.

¶ 19 Appellant further alleges that the Miller Act does not apply because the construction of the four barges does not fit within the definition of a "public work" of the federal government. Appellant argues that because title to the barges had not yet vested in the federal government, the project did not become a "public work" until after the project was completed. In support of this contention, Appellant cites *United States use of Mengel Body Co. v. Metropolitan Body Co.,* 79 F.2d 177 (2d Cir.1935), wherein the court held that the construction of frames for mail trucks was not a public work because title to the frames did not vest in the federal government until the final product was delivered.

¶ 20 In the present case, the record contains no evidence of whether title to the

---

1. We note that the Miller Act was previously found at 40 U.S.C.S. §§ 270a–270d.

barges had vested in the federal government. Furthermore, the United States Supreme Court has made it clear that a decision regarding title does not determine whether a work qualifies as a "public work" under the Miller Act. *See United States use of Noland Co. v. Irwin,* 316 U.S. 23, 62 S.Ct. 899, 86 L.Ed. 1241 (1942) (holding that possession of title to an item is no longer of primary significance in determining whether something is a "public work").

¶ 21 The Miller Act does not provide a definition of the term "public work." However, we are guided by the definition espoused by the United States Supreme Court decision in *Noland* as well as by the definitions utilized in cases from several other jurisdictions.

¶ 22 In *Noland,* the Court adopted the definition provided in the National Industrial Recovery Act, enacted two years prior to the Miller Act, wherein Congress defined a public work as including "any projects of the character heretofore constructed or carried on either directly by public authority or with public aid to serve the interests of the general public." *Id.* at 28, 62 S.Ct. 899 (quoting the National Industrial Recovery Act). The Court held that a contract for the construction of a federally funded library at Howard University was a "public work" of the United States. *See also United States use of Westinghouse Electric Supply Co. v. National Surety Company,* 179 F.Supp. 598 (E.D.Pa.1959) (citing *Noland* and finding a written agreement between a construction contractor and the United States Army Corps of Engineers for the construction of a storage facility for Nike missile equipment was within the meaning of "public work.") In *United States for use of Owens v. Olympic Marine Services,* 827 F.Supp. 1232, 1234 (E.D.Va.1993), the court defined a "public work" as including any project

carried on with public aid to serve the interests of the general public. The court ruled that a contract to install deck coverings on ships owned by the United States was a public work within meaning of the Miller Act. Similarly, in *Peterson v. United States,* 119 F.2d 145, 147 (6th Cir.1941), the court defined a public work as "any work in which the United States is interested and which is done for the public and for which the United States is authorized to expend funds." Based on this definition, the *Peterson* court found a project for flood control of navigable streams was a public work because it benefited the public and promoted commerce among the states. *Id.* *See also United States of America for the Use of McDermott v. Woods Construction Co.,* 224 F.Supp. 406 (N.D.Okl.1963) (finding the Miller Act applicable to contract for construction on state highway). Other courts have applied the Miller Act to situations where the United States is a contracting party and the bond in question runs in favor of the United States. *See United States use of Motta v. Able Bituminous Contractors, Inc.,* 640 F.Supp. 69, 71 (D.Mass.1986) (finding the Miller Act applied where contractor entered into written contract with U.S. for highway construction and bonds were issued in accordance with the Miller Act).

¶ 23 Our review of the relevant case law causes us to conclude that in defining the term "public work" within the meaning of the Miller Act the courts have placed importance on whether the United States is a party to the contract, whether the bond runs in favor of the United States, whether the United States has an interest in the work being completed, and, whether the work serves the interests of the general public.

¶ 24 In the instant case, Wilhelm contracted with an agency of the United States, the United States Army Corps of

Engineers, to build four barges. The payment bond Wilhelm was required to obtain pursuant to that contract, upon which Appellant now bases its claim, runs in favor of the United States government. In addition, both the United States and the general public have an interest in the completion of these barges as they benefit interstate commerce. *See Peterson,* 119 F.2d at 147.

¶ 25 For the foregoing reasons, we find the construction of the four inland river style barges constitutes a "public work" within the meaning of the Miller Act.[2] Thus, because we find the underlying contract was for the construction of a public work of the federal government, we conclude that it properly falls within the ambit of the Miller Act; consequently, the federal courts have exclusive jurisdiction. *See* 40 U.S.C.S. 3133(b)(3)(B). Accordingly, as Appellant's claim is based on the payment bond issued pursuant to that contract, we find no error in the trial court's dismissal of Appellant's claim for lack of subject matter jurisdiction.[3]

■ ¶ 26 Lastly, Appellant argues that even if the trial court lacked jurisdiction over its claims arising from the payment bond, it retained jurisdiction over its ancillary claims for common law fraud and promissory estoppel. Appellant's arguments are based on its contention that the January 29, 2002, letter it received from Appellees created an independent obligation separate from its obligation under the payment bond.

¶ 27 The January 29th letter states the following:

United States Fire Insurance Company is the bonding company that provided Performance and Payment bonds on behalf of Hiller Barge Company, LLC relating to the Ace Inland barge project.

Our Bond principal, Hiller Barge Company, LLC, has advised us that its receipt of supplies is critical to the timely completion of this project. As the Surety, we control a job specific bank account and will guarantee disbursement of monies per the invoice on delivered material or services.

Therefore, with these guarantees and assurances in place, please ensure the timely receipt of materials or services to Hiller Barge Company, LLC.

¶ 28 The trial court found the letter did "no more than restate the terms of the Bond, and [did] not independently bind [Appellees] beyond their obligations under the payment bond." Trial Court Opinion, 12/23/04, at 10.

¶ 29 We find the facts in the present case materially similar to those in *General Equipment Inc. v. United States Fidelity & Guaranty Ins. Co.,* 292 So.2d 806 (La. Ct.App.1974), wherein a similar claim was rejected. In *General Equipment,* the appellant claimed that apart from the payment bond governed by the Miller Act, a separate surety agreement upon which it was suing existed. The letter at issue stated, "Please be advised that your client's bill will be taken care of by [the contractor] or by U.S.F. & G., as surety." *Id.* at 807. The Louisiana appellate court held the letter did not create an independent obligation; rather, the court reasoned that the letter actually undermined the appellant's argument because it stated that

---

**2.** Having determined Appellant's claims are governed by the Miller Act, we need not reach its arguments regarding the statute of limitations as Appellant predicates those arguments upon a finding that the Miller Act is inapplicable.

**3.** Appellant also argues that the application of the Miller Act will result in a dismissal of its complaint and therefore not effectuate the purpose of the Act. We will not address this issue as it is more appropriate for review in the federal courts.

the surety was obligated to pay the contractor's debts "as surety." *Id.* The court concluded that the sole basis for the appellant's claim was against the surety based on the surety contract and not based on an independent obligation created by the letter. *Id.*

¶ 30 Here, Appellant argues that an independent obligation was created by the January 29th letter. However, the letter merely identifies U.S. Fire as the issuer of the payment bond for the project and guarantees payment for labor and supplies, as the surety on the project. We conclude that the January 29th letter did not create an independent obligation on the part of the Appellees. In fact, we find, like the Louisiana court in *General Equipment,* that Appellant's argument is actually undermined by the existence of the letter. The letter clearly states that Appellee U.S. Fire was obligated to pay "as the surety." Thus, Appellant's claims of fraud and promissory estoppel do not arise from an independent obligation created by the letter; rather, any claims are against Appellees as the sureties on the payment bond. As previously discussed, all claims stemming from the payment bond are governed by the Miller Act which grants exclusive jurisdiction to the federal courts. Accordingly, we find no error in the trial court's dismissal of Appellant's fraud and promissory estoppel claims.

¶ 31 Order affirmed.