686 A.2d 809

**In re John Edward HASAY, District Justice
in and for Magistrate District 11–3–01.**

**Appeal of JUDICIAL CONDUCT BOARD.**

Supreme Court of Pennsylvania.

Argued Sept. 18, 1996.

Decided Dec. 24, 1996.

482

484

Vincent J. Quinn, Harrisburg, G.D. Anthony, Lisa D. McClain, Pittsburg, for Judicial Conduct Board.

Basil G. Russin, Forty Fort, Al Flora, Jr., Wilkes Barre, for J.E. Hasay.

Before FLAHERTY, C.J., and ZAPPALA, CAPPY, CASTILLE, NIGRO and NEWMAN, JJ.

*OPINION OF THE COURT*

FLAHERTY, Chief Justice.

This is the first appeal from the Court of Judicial Discipline since its creation by constitutional amendment in 1993 and the establishment of the court as a functioning body. The Judicial Conduct Board, created by the same constitutional amendment, is charged with investigation and prosecution of complaints against judicial officers. This is an appeal by the board, appellant, from the dismissal of charges against district justice John Edward Hasay, appellee, following a trial.[1] The board seeks review of two discovery orders by the court as well as the court's dismissal of each of two counts of misconduct lodged against the magistrate. Given the novelty of the issues, we find it necessary to examine the new constitutional provisions in some depth in order to conduct a proper review of the claims presented by the board.

1. The constitution speaks exclusively of "hearings" before the Court of Judicial Discipline, whereas the court's rules of procedure refer to the proceedings as "trials." The court is a court of record wherein all hearings are public proceedings conducted pursuant to the rules adopted by the court and in accordance with the principles of due process and the law of evidence, where parties have rights to discovery, subpoena, and the production of documents, and the court has the power to enter disciplinary sanctions against judicial officers up to and including removal from office with a lifetime bar against serving as a judicial officer in this Commonwealth. It is not inappropriate to refer to the court's proceedings as "trials."

■ Two constitutional provisions provide fundamental guidance to this court in appeals from the Court of Judicial Discipline:

(2) On appeal [by a judge or justice of the peace from a final adverse order of discipline of the court], the Supreme Court ... shall review the record of the proceedings of the court as follows: on the law, the scope of review is plenary; on the facts, the scope of review is clearly erroneous; and as to sanctions, the scope of review is whether the sanctions imposed were lawful. The Supreme Court ... may revise or reject an order of the court upon a determination that the order did not sustain this standard of review; otherwise the Supreme Court ... shall affirm the order of the court.

(3) An order of the court which dismisses a complaint against a judge or justice of the peace may be appealed by the board to the Supreme Court, *but the appeal shall be limited to questions of law.* ...

Pa. Const. Art. V, § 18(c)(2) and (3) (emphasis added). It is therefore evident, as a preliminary matter, that the scope of review in this appeal is limited to questions of law. An appeal by a judicial officer challenging an adverse order of discipline is clearly distinguished from an appeal by the Judicial Conduct Board challenging the dismissal of a complaint; this, of course, is the latter. In an appeal by a judicial officer from an order imposing discipline, the standard of review for factual questions is the clearly erroneous standard. Pa. Const. Art. V, § 18(c)(2). In an appeal by the board from the dismissal of a complaint, there is no standard of review for factual questions, because issues of fact are beyond the scope of our review,[2]

**2.** This court has distinguished scope of review and standard of review as follows:

"Scope of review" and "standard of review" are often—albeit erroneously—used interchangeably. The two terms carry distinct meanings and should not be substituted for one another. "Scope of review" refers to "the confines within which an appellate court must conduct its examination." *Coker v. S.M. Flickinger Co.,* 533 Pa. 441, 450, 625 A.2d 1181, 1186 (1993). In other words, it refers to the *matters* (or "what") the appellate court is permitted to examine. In contrast, "standard of review" refers to the *manner* in which (or "how") that examination is conducted. In *Coker* we also referred to

which "shall be limited to questions of law." Pa. Const. Art. V, § 18(c)(3).

The first two issues raised by the board are challenges to discovery orders, and, as such, do not raise factual questions but are clearly legal questions. Our scope of review is plenary as to these issues.

At the request of appellee prior to trial, the court ordered the board to disclose the identity of the complainant. In addition, the court ordered the board to provide the minutes of the board meeting affecting the investigation of appellee. The board argues that the information was not discoverable because it was confidential, it was not relevant or material, and the discovery order was premised on an erroneous interpretation of the constitution.

Three provisions in the constitution bear on these issues:

(a)(7) The board shall receive and investigate complaints regarding judicial conduct filed by individuals or initiated by the board; issue subpoenas to compel testimony under oath of witnesses, including the subject of the investigation, and to compel the production of documents, books, accounts and other records relevant to the investigation; determine whether there is probable cause to file formal charges against a justice, judge or justice of the peace for conduct proscribed by this section; and present the case in support of the charges before the Court of Judicial Discipline.

(8) Complaints filed with the board or initiated by the board shall not be public information. Statements, testimony, documents, records or other information or evidence acquired by the board in the conduct of an investigation

---

the standard of review as the "degree of scrutiny" that is to be applied. *Id.*

*Morrison v. Com., D.P.W.,* 538 Pa. 122, 131, 646 A.2d 565, 570 (1994) (per Cappy, J.). The *Morrison* opinion continues with an extensive discussion of the distinctions and interplay between scope of review and standard of review.

The constitutional mandate that "the appeal shall be limited to questions of law," Pa. Const. Art. V, § 18(c)(3), is a clear statement that the scope of review is limited to questions of law, and, by necessary implication, that questions of fact are matters this appellate court is not permitted to examine.

shall not be public information. A justice, judge or justice of the peace who is the subject of a complaint filed with the board or initiated by the board, or of an investigation conducted by the board, shall be apprised of the nature and content of the complaint and afforded an opportunity to respond fully to the complaint prior to any probable cause determination by the board. All proceedings of the board shall be confidential except when the subject of the investigation waives confidentiality....

....

(b)(5) Upon the filing of formal charges with the court by the board, the court shall promptly schedule a hearing or hearings to determine whether a sanction should be imposed against a justice, judge or justice of the peace pursuant to the provisions of this section. The court shall be a court of record, with all the attendant duties and powers appropriate to its function. Formal charges filed with the court shall be a matter of public record. All hearings conducted by the court shall be public proceedings, conducted pursuant to the rules adopted by the court and in accordance with the principles of due process and the law of evidence. Parties appearing before the court shall have a right to discovery pursuant to the rules adopted by the court and shall have the right to subpoena witnesses and to compel the production of documents, books, accounts and other records as relevant. The subject of the charges shall be presumed innocent in any proceeding before the court, and the board shall have the burden of proving the charges by clear and convincing evidence. All decisions of the court shall be in writing and shall contain findings of fact and conclusions of law. A decision of the court may order removal from office, suspension, censure or other discipline as authorized by this section and as warranted by the record.

Pa. Const. Art. V, § 18(a)(7) and (8), and § 18(b)(5).

In construing the above constitutional provisions and ordering the board to disclose the identity of the complainant, the court reasoned as follows. It focused on the language of Pa.

Const. Art. V, § 18(a)(8): "Statements, testimony, documents, records or other information or evidence acquired by the board shall not be public information. . . . All proceedings of the board shall be confidential except when the subject of the investigation waives confidentiality." The court's interpretation of the language is that it does not vest the board with discretion when a subject waives confidentiality. "The language is mandatory in nature. The proceedings remain confidential only when a judicial officer who is the subject of an investigation does not waive his right to confidentiality." Slip op. at 3, May 10, 1995. The court contrasted the provision giving the board discretionary power to release information when it finds no probable cause to file formal charges. The constitution states:

> In acting to dismiss a complaint for lack of probable cause to file formal charges, the board may, at its discretion, issue a statement or report to the complainant or to the subject of the complaint, which may contain the identity of the complainant, the identity of the subject of the complaint, the contents and nature of the complaint, the actions taken in the conduct of the investigation and the results and conclusions of the investigation.

Pa. Const. Art. V, § 18(a)(8). This use of specifically discretionary language in the situation where the board dismisses a complaint for lack of probable cause was understood by the court to reinforce its reading of the earlier wording it interpreted as mandating disclosure when a subject waives confidentiality and the board has not dismissed the complaint. The court viewed the confidentiality provisions as existing to protect only the interests of the judicial officer who is the subject of an investigation. "The people of the Commonwealth, in approving the language of the constitutional amendment to require Board proceedings to remain confidential except when a judicial officer waives that right, did not intend to protect the confidentiality of any other persons involved in a proceeding against a judicial officer." Slip op. at 4, May 10, 1995. Accordingly, it ordered disclosure of the identity of the complainant.

The board counters with the argument that the court's ruling confused the concepts of confidentiality and discoverability, and that the ruling was based on erroneous interpretation of the applicable constitutional provisions.

First, according to the board, the court erroneously construed the following sentences of Pa. Const. Art. V, § 18(a)(8). The section provides:

(8) Complaints filed with the board or initiated by the board shall not be public information. Statements, testimony, documents, records or other information or evidence acquired by the board in the conduct of an investigation shall not be public information.... All proceedings of the board shall be confidential except when the subject of the investigation waives confidentiality.

The court applied the waiver provision of the last quoted sentence to the confidentiality created in the first two sentences. The board argues that such an interpretation ignores the plain meaning of the constitution. The board suggests that the intent of the drafters was to protect a judicial officer in the event that a confidential investigation improperly becomes public information. "In those circumstances," argues the board, "the judicial officer who is facing rumors and gossip concerning any actions taken by the Board, may wish to file a waiver so that he may participate in any hearings or meetings of the Board and open the proceedings to public scrutiny" so "there can be no claim that either the Board was persecuting the judge or 'whitewashing' the complaint."

In the view of the board, waiver of confidentiality by the subject of an investigation does not make the documents set forth in the first two sentences of § 18(a)(8) discoverable. The constitution speaks of the confidentiality of "proceedings." Board meetings and hearings are proceedings. Complaints and other information acquired by the board and minutes of board meetings are not proceedings; rather, they are records and information acquired by the board. The constitutional waiver language is designed so that the judicial officer under investigation by the board may open the proceedings to public scrutiny. There is no indication that the constitutional drafts-

men intended to permit a judicial officer to obtain confidential information simply by filing a waiver after charges have been brought. After the board brings charges, it conducts no further proceedings with respect to the subject of its investigation; all further proceedings are conducted by the Court of Judicial Discipline, and all such proceedings are public.

The board argues, by analogy to the waiver of constitutional rights in a criminal case, that a waiver can only be effective if it occurs *prior to* surrendering the right in question. The constitutional section at issue addresses only proceedings of the Judicial Conduct Board, not proceedings of the Court of Judicial Discipline. Once formal charges have been filed and proceedings in the court have commenced, it is meaningless for the subject of the charges to waive confidentiality as to proceedings of the board, which have ended, for all further proceedings before the court are public proceedings. In other words, the board claims, there remains no right of confidentiality to be waived once the board has filed formal charges and proceedings have begun in the court.

Second, the board argues that the court made the "absurd" assumption that information which is not confidential is automatically discoverable. Production of documents, whether or not they are confidential, always requires a showing of relevance. While maintaining its position that the identity of the complainant is confidential, the board concedes that any information, including the identity of the complainant, is subject to disclosure if the judicial officer facing charges in the Court of Judicial Discipline can show a need for the information as well as its relevancy and materiality. In this case, however, the magistrate merely presented a boilerplate allegation that he needed the information in order to attack the bias or prejudice of complainants who testify at trial. The board averred that it had disclosed all information in its possession which was even arguably relevant to the adjudication of charges by the court. The complainant was not a witness at the trial, nor was the complainant even mentioned during the trial. Disclosure of the identity of a complainant carries the risk of retaliation or harassment, and should not be compelled unless the judicial

officer can state specific reasons which justify access to that information. The board again analogizes to the criminal law. The board argues that disclosure of the identity of a confidential informant to a criminal defendant, though it may be of vital interest, is not always required, citing *Commonwealth v. Carter*, 427 Pa. 53, 233 A.2d 284 (1967).

Inasmuch as the board long ago disclosed the identity of the complainant to the magistrate pursuant to the order of the court, this matter is technically moot. It is nonetheless justiciable as an exception to the mootness doctrine because it is clearly "capable of repetition, yet evading review." *Globe Newspaper Co. v. Superior Court*, 457 U.S. 596, 603, 102 S.Ct. 2613, 2618, 73 L.Ed.2d 248, 254 (1982); *A.Y. v. Commonwealth, Dep't of Public Welfare*, 537 Pa. 116, 128 n. 1, 641 A.2d 1148, 1154 n. 1 (1994) (Castille, J., concurring). The board preserved this issue at all stages of the proceedings. Accordingly, we will review it.

We agree with the board's interpretation of the constitutional provisions governing confidentiality. Reading all of the relevant provisions together so as effectuate the intent of the drafters, we hold that a waiver of confidentiality by a judicial officer pursuant to § 18(a)(8) does not automatically entitle him to receive all the confidential information, including the complaint, acquired by the board in the course of its investigation. A waiver of confidentiality under § 18(a)(8) affects proceedings before the board prior to their termination, which may occur either upon the board's dismissal of a complaint for lack of probable cause or upon the commencement of public proceedings in the Court of Judicial Discipline.

Discovery of documents and information acquired by the board is mandatory only if it is "essential to a fair determination," a standard set forth in *Roviaro v. United States*, 353 U.S. 53, 61, 77 S.Ct. 623, 628, 1 L.Ed.2d 639, 645 (1957). In *Commonwealth v. Carter, supra*, this court interpreted *Roviaro* to require disclosure (of a confidential informant in a criminal case) only if it is relevant, material, and helpful to the defense, and the question requires a balancing

of the particular circumstances of each case, considering the crime charged, possible defenses, possible significance of the informant's testimony, and other relevant factors. Thus, even in criminal cases which have the most liberal requirements of disclosure, the identity of an informant is not necessarily discoverable but depends always on materiality and relevancy, together with a balancing of other factors.

 Disciplinary cases are civil proceedings, though the severe sanctions which may be imposed have led to the observation that such proceedings are "quasi-criminal in nature." *Matter of Chiovero,* 524 Pa. 181, 189, 570 A.2d 57, 61 (1990). In some respects, they are more akin to criminal than to civil cases. *Id.* ("[W]e have never held that a respondent-jurist before the [Judicial Inquiry and Review] Board is not clothed with the fundamental constitutional rights available to criminal defendants.") In this civil (but quasi-criminal) proceeding, the judicial officer facing charges in the Court of Judicial Discipline must make the same showing that the identity of the complainant is relevant, material, and likely to be helpful to the defense. The boilerplate allegation made by the magistrate in this case, that disclosure was necessary for "attacking the bias or prejudice of any complainants who testify at trial," was far short of what was required, particularly as the complainant was never listed nor called as a witness. Thus, it was error for the Court of Judicial Discipline to order disclosure of the complainant's identity in this case.

 The second issue also involves discovery. The magistrate requested the minutes of the board deferring any investigation as well as minutes of the board authorizing a full investigation of him. He alleged that these records were essential to determine whether the board "violated its own rules of procedure and [his] due process rights by inappropriately deferring any investigation pending disposition of a criminal matter." R.R. at 27a. The court ordered disclosure of the requested minutes but omitted those parts of the minutes which "constitute subject matter that is protected by

the attorney-client privilege or work-product doctrine, including recommendations by Board Counsel."

The court's rationale for this decision was, again, that a waiver of confidentiality by the subject of the proceedings mandates disclosure by the board, but the court also reasoned that due process requires the board to comply with its rules of procedure, justifying disclosure of its proceedings to the subject, in order to make the process reviewable by the Court of Judicial Discipline and by this court. Again, we reject the notion that the magistrate's waiver of confidentiality makes disclosure mandatory, for the reasons stated in relation to the first issue. Nevertheless, it is possible that the board's compliance, or lack thereof, with its procedural rules may be an issue in a trial in the Court of Judicial Discipline and may justify discovery such as ordered in this case.

The board argues that the court's only role is to schedule a trial on the formal charges and adjudicate the complaint filed by the board, citing Pa. Const. Art. V, § 18(a)(7). The board claims that the court does not have the constitutional authority or jurisdiction to review the board's compliance with its own rules of procedure, but may only determine whether there is clear and convincing evidence of ethical misconduct. The board's position on this issue is radical: the board's decisions concerning probable cause to file formal charges with the Court of Judicial Discipline are non-reviewable by that or any other court. The board's brief states:

> To the extent that C.J.D.R.P. No. 411(D) provides that "the Judicial Officer may challenge the validity of the charges on any legal ground including ... (3) that the Board violated the procedures governing it," it is clearly unconstitutional since the Court of Judicial Discipline's rule-making authority is limited to adopting rules which govern the conduct of the hearings before it. Furthermore, there is no authority, either in the Constitution or in the Rules of Conduct for District Justices, for the proposition that a violation of the Board's Rules should constitute a defense to formal charges.

The opinion of the Court of Judicial Discipline stated: "[C]ontrary to the Board's position that this Court's only function is to determine whether to impose a sanction, ... part of [that decision] may include, where relevant, an inquiry into the question of whether the Board has followed the rules it has adopted for its own governance." Slip op. at 5, May 10, 1995.

The constitutional amendments of 1993 which created both the board and the court also empowered both to establish procedural rules to guide their proceedings. Both have done so pursuant to Pa.R.J.P. No. 103, which establishes the procedure for adopting, filing, and publishing rules by courts, boards, and other agencies.

We emphatically reject the assertion that the board's compliance with its rules of procedure is absolutely beyond judicial review. The rules exist in part to insure that due process is accorded judicial officers subject to investigation and prosecution by the board. The constitution states that all hearings before the Court of Judicial Discipline shall be "conducted pursuant to the rules adopted by the court and in accordance with due process." Pa. Const. Art. V, § 18(b)(5).

█ In *Matter of Chiovero, supra,* we faced a similar question as to the reviewability of the procedural integrity of the Judicial Inquiry and Review Board (JIRB), the predecessor to the Court of Judicial Discipline:

The JIRB is required by the Pennsylvania Constitution, for the protection of the judiciary and the respondent, to keep their proceedings secret until they recommend a sanction to this Court. The other end of that secrecy is the power to go beyond their purpose. Unaccountable secrecy, with its attendant opportunity to harass, intimidate, favor, raise or lower standards in particular unreported cases, to satisfy their view of what ought to be or not be, is a power beyond any known to our law. A tribunal that operates in secrecy can indulge its suspicions, yield to public pressure, even its whims, send zealous agents with a deliberate intent to find grounds to bring a judge beneath its influence for good or purposes of their own.... [T]he possibility must render

them strictly accountable whenever their proceedings surface.

. . . .

Meanwhile, secrecy hides the ineluctable powers of the JIRB to inquire, to influence, indeed to terrorize, harass and intimidate those who would rather accept a milder sanction, albeit unauthorized, than face the costs and troubles of resistance.

The secrecy is, however, mandated and we must observe it. Given these obvious and inherent dangers, we must therefore utilize the highest constitutional scrutiny in our *de novo* review, insisting that all of the legal requirements, including the rules we provide for the JIRB, be meticulously observed.

524 Pa. at 187–90, 570 A.2d at 60–61. Like JIRB proceedings, proceedings before the Board of Judicial Conduct are not public proceedings unless and until the board determines there is probable cause to support a finding of judicial misconduct and initiates formal charges before the Court of Judicial Discipline. Although the quotation from *Matter of Chiovero* is an extreme statement of potential abuse of secret proceedings, the mere possibility of such abuse mandates vigilance when the proceedings are subject to judicial review.[3] We therefore hold that the rules of the Court of Judicial Discipline properly include reference to the board's compliance with its rules as an issue subject to the review of the court.

The discipline of a judicial officer is a process which begins the moment a complaint is received by the board. The judicial officer is entitled to due process at all stages of the proceeding before the board, the court, and on appeal. A denial of due process by the board may be remedied by the court or on appeal. Every minor or technical violation of the board's

**3.** Reference to *Matter of Chiovero* does not indicate that all cases involving JIRB will be authoritative as to proceedings in the Court of Judicial Discipline. The 1993 constitutional amendments creating the court and the Judicial Conduct Board restructured the entire mechanism for the discipline of judicial officers. Nevertheless, when, as here, issues in JIRB cases parallel issues presented in cases of the Court of Judicial Discipline, it may be expedient to seek guidance in JIRB cases.

rules may not be a denial of due process, and the appropriate remedy may be a minor matter; nonetheless, the guarantee of due process requires that the board's procedures be reviewable.[4] The court's rule of procedure 411(D)(3), allowing an accused judicial officer to challenge the board's procedural integrity, is a valid exercise of the court's rule-making authority, and is perfectly in keeping with the constitutional mandate that the court conduct its hearings "in accordance with the principles of due process."

We perceive no error in the discovery order of the Court of Judicial Discipline in this case. It was a proper means of insuring that due process was accorded to the accused judicial officer, and it was carefully circumscribed to prevent disclosure of privileged information.[5]

The final issues relate to the ultimate questions in the case: whether, as a matter of law, the court erred in dismissing charges of misconduct in an incident involving possession of marijuana and an incident involving a fourteen-year-old girl.

The facts of the marijuana incident, as set forth in the findings of fact by the disciplinary court, are as follows. In 1991, in connection with an unrelated criminal case, police officers conducted a search of the magistrate's residence, pursuant to a warrant, and discovered 43 grams of marijuana tied together at the root stems, lying on a beer tray under the magistrate's bed. The beer tray also contained a Pennsylvania Liquor Control Board receipt dated June, 1984. The search failed to reveal any drug paraphernalia for using the

4. Statutes of limitation and repose, rules limiting time, and other rules of procedure may have no logical relation to the factual basis of a criminal or disciplinary prosecution or other civil litigation; justice and fairness, however, often depend on regularity in proceedings, so procedural rules may supersede the adjudication of the underlying merits of a controversy. As the board argues, violation of the board's procedural rules is not a defense, per se, against charges of misconduct; nevertheless, a deprivation of due process may preclude prosecution or affect the prosecution in other significant respects.

5. As stated supra, the order compelling disclosure of board minutes excluded "subject matter that is protected by the attorney-client privilege or work-product doctrine, including recommendations by Board Counsel."

marijuana. The marijuana had been given to the magistrate by a friend at a party in the house and the magistrate placed it on a tray which had a liquor store receipt for the purchase of liquor for the party. After the party, the magistrate forgot about the marijuana and never saw it again until the search in 1991. He did not intentionally or knowingly possess the marijuana in 1991.

The board prosecuted the magistrate for misconduct, charging, *inter alia,* that the conduct violated Pa. Const. Art. V, § 17(b), engaging in any activity proscribed by law, and Pa. Const. Art. V, § 18(d)(1), engaging in conduct which prejudices the proper administration of justice or brings the judicial office into disrepute. Following the trial, the court held that the magistrate had committed no misconduct which warranted the imposition of any disciplinary sanction.

█ The board's first argument on this issue is that the court erred in concluding that the magistrate did not engage in criminal behavior in possessing marijuana. The first prong of this argument appears to be an unwillingness to accept the court's factual finding that the magistrate did not intentionally or knowingly possess the marijuana when it was discovered. Our scope of review, as stated earlier, is limited to questions of law, and factual issues are clearly beyond that scope. Thus we must accept as a fact, as the court found, that the magistrate did not in fact possess the marijuana knowingly or intentionally. We must reject the board's attempt to argue that such a finding is not a factual one, but a legal conclusion. Although knowledge and intent are legal elements of criminal possession, it is also possible to make a purely factual determination regarding knowledge and intent, which is what the court did in this instance. Even though such a factual finding may predetermine a legal conclusion as to possession with intent, it remains a factual finding. As such, it is not subject to review in this appeal.

█ The second prong of the board's argument that the magistrate was guilty of criminal possession of marijuana is a legal argument: even if the magistrate did not, in fact, know-

ingly or intentionally possess the marijuana, he was guilty of criminal possession under the doctrine of constructive possession. The board accurately sets forth the law of constructive possession, whereby an accused who is not personally in possession of contraband might yet be deemed to be in possession if the contraband was discovered in a place under his exclusive control, as the marijuana was in this case. Without extensive discussion, the defect in the board's argument is the assumption that if the doctrine of constructive possession may be applied to the facts, then it must be applied. This is not so. The doctrine permits a finding of possession under these circumstances, but it does not require it. The court credited the magistrate's testimony that he did not know the marijuana was under his bed and thus did not apply the doctrine of constructive possession. This is not an error of law.

The board's second argument on the marijuana incident is that, even if the magistrate was not guilty of a criminal violation, the conduct was certainly such as to bring the judicial office into disrepute. The board argues that a judicial officer, even in his private life, is held to higher standards than other citizens. It is not enough that a magistrate not violate the criminal law; the high standards of conduct contemplated in the Rules of Conduct for District Justices envision more than mere compliance with the criminal law.

It is true that judicial officers are held to higher standards of conduct than other citizens, but we cannot agree that the court erred, as a matter of law, in concluding that no sanction was appropriate in this case. While the conduct in this instance was not exemplary, we do not hold, as a matter of law, that the Court of Judicial Discipline erred in refusing to impose disciplinary sanctions. Two of seven judges dissented from the conclusion of the majority, indicating there is room for difference of opinion. Nevertheless, we will not override the decision to withhold sanctions. Although the conduct in this case might arguably bring the judicial office into disrepute, it is not indisputably such misconduct as de-

mands disciplinary sanctions, so we affirm this decision of the Court of Judicial Discipline.

The final issue is whether the court erred in dismissing charges of misconduct related to the magistrate's conduct with a fourteen-year-old girl. The court's findings establish that at approximately 2:00 a.m. on February 8, 1992, the magistrate and a male friend were driving home from a club when they saw a teenage girl walking alone on the rural highway. The magistrate's friend, who was driving, offered the girl a ride home. The friend dropped the magistrate and the girl at the magistrate's house, where they got in his car and he drove her twelve miles to the town where she lived. As they approached the town, she asked him to leave her at a remotely located gas station so she could call her boyfriend. The magistrate asked her about her home and she told him her mother was an alcoholic and her father did not live with them. The magistrate refused to drop her at the gas station and, instead, returned her to his residence. She slept on a chair in his living room, he slept on a couch across from her, while his father slept in an upstairs bedroom. At approximately 8:00 a.m., he drove the girl to her grandmother's house and waited outside until the girl entered the house. The magistrate did not touch the girl or make any sexual or improper advances towards her.

The board prosecuted the magistrate for misconduct, charging, *inter alia*, that the conduct violated Pa. Const. Art. V, § 18(d)(1) by bringing the judicial office into disrepute, and by violating Rules of Conduct for District Justices, Rule 1, by failing to observe high standards of conduct, and Rule 2A, by failing to "conduct himself at all times in a manner that promotes public confidence in the integrity ... of the judiciary." Following the trial, the court held that the magistrate's encounter with the girl was not misconduct which warranted the imposition of any disciplinary sanction.

We agree. The board makes no serious argument on this issue, apparently taking the position that it is self-evident that such conduct brings the judicial office into disrepute and

undermines public confidence in the integrity of the judiciary. While it may be true that the magistrate could have shown better judgment by exploring alternatives other than keeping the girl at his residence overnight, he did nothing improper with the girl, and, in fact, the entire situation arose out of his concern for the girl's welfare when he and his friend first found her walking a rural highway in the middle of the night. We affirm the court's unanimous conclusion that no disciplinary sanction should be imposed in relation to this incident.

The order of the Court of Judicial Discipline is affirmed in part and reversed in part. As the portion of the order which is reversed is now moot, no further proceedings are necessary.