**John WHIBBY, Petitioner,**

v.

**COMMONWEALTH of Pennsylvania, DEPARTMENT OF CORRECTIONS, Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Feb. 28, 2003.

Decided April 1, 2003.

John Whibby, petitioner, pro se.

Laura J. Neal, Camp Hill, for respondent.

BEFORE: SMITH–RIBNER, Judge, LEAVITT, Judge, and MIRARCHI, JR., Senior Judge.

OPINION BY Senior Judge MIRARCHI.

The Department of Corrections (Department) has filed a motion to terminate or modify a permanent injunction issued on October 4, 2001 in the course of this action in our original jurisdiction. We deny the Department's motion.

John Whibby (Petitioner) is or was an inmate at the State Correctional Institution at Rockview (SCI–Rockview) serving a sentence for his 1988 rape conviction.[1] In 2000, he commenced an action against the Department seeking the expungement of a DNA[2] sample taken from him in June of that year, an order enjoining SCI–Rockview personnel from using force and other coercive measures to collect DNA samples, and damages in excess of $10,000. Petitioner alleged that the SCI–Rockview personnel coerced him to supply a DNA sample by administrative sanctions and the threat of force. On October 13, 2000, Petitioner filed a motion seeking a preliminary injunction against the Department's use of administrative sanctions to collect DNA samples. He also requested the expungement of the DNA sample already drawn.

On November 1, 2000, we granted Petitioner's motion in part and issued a preliminary injunction enjoining the Department from the following acts: (1) extracting or threatening to extract DNA samples from Petitioner; (2) imposing administrative sanctions on Petitioner, including but not

---

1. The Department avers in an Application for Special Relief, filed January 24, 2003, that Petitioner was due to reach his maximum sentence term on February 21, 2003.

2. Deoxyribonucleic acid.

limited to increased custody level, denying contact visits, or transferring him to another correctional institution solely because he declined to surrender a DNA sample; and (3) harassing or intimidating Petitioner because he declined to provide a DNA sample or because he filed the present lawsuit.

On September 16, 2001, Petitioner filed an application for summary relief. By order dated October 4, 2001, we granted said relief and made permanent the injunction issued on November 1, 2000. In so ruling, we held that the Department's DNA Collection Policy 6.3.18 (since amended) was not in accordance with statutory law. We also held, however, that to the extent Petitioner sought expungement of the DNA sample already taken, no relief could be granted because of his failure to name the Pennsylvania State Police, the custodian of the sample, as a party.

On January 13, 2003, the Department filed the present motion to terminate or modify the injunction. Petitioner opposed the motion, and this Court ordered that the matter be submitted on briefs. Following the Department's application for special relief, we ordered an expedited filing of the briefs.

■ Pursuant to Pa. R.C.P. No. 1531(c), a party may move to dissolve an injunction at any time. The party moving for the dissolution must show any changes in circumstances that have occurred since the issuance of the injunction. *County of Butler v. Local 585, Service Employees International Union, AFL–CIO*, 158 Pa. Cmwlth. 519, 631 A.2d 1389 (1993). The Department argues that the change in circumstances is a change in the statutory law governing DNA data and testing and an amendment of its DNA Collection Poli-

cy since the issuance of the injunction. When an injunction serves no purpose because of the expiration of the statutory authority supporting it, an application to dissolve the injunction is appropriate. *Township of Salisbury v. Sun Oil Co.*, 406 Pa. 604, 179 A.2d 195 (1962).

On the date Petitioner's DNA sample was taken and the date this Court entered the permanent injunction, the DNA Detection of Sexual and Violent Offenders Act (Former Act) [3] was in effect. The legislature thereafter enacted the Act of June 19, 2002, P.L. 394, 42 Pa.C.S. §§ 4701–4741 (Current Act), to supersede the Former Act. Both Acts set forth policy findings that the establishment of DNA data banks is an important tool in criminal investigations, in excluding individuals from criminal suspicion and prosecution, and in deterring and detecting recidivist acts. Both Acts require the collection of DNA samples from inmates convicted of felony sex and other specified offenses, even if they were convicted prior to the effective date of the Acts.

The Department argues that the permanent injunction in this matter should be dissolved because the Current Act requires that a person subject to the Act may not be released *in any manner* from incarceration until a DNA sample has been withdrawn, whereas the Former Act required that a person subject to the Act may not be released from incarceration *prior to the expiration of his or her maximum term* until a DNA sample has been withdrawn. *Compare* 42 Pa.C.S. § 4716 *with* Section 306 of the Former Act, formerly 35 P.S. § 7651.306. In Paragraph 9 of its Motion to Terminate/Modify Injunction, the Department avers that Section 4716 of the Current Act establishes that "the collection of DNA samples from Peti-

---

**3.** Act of May 28, 1995, P.L. 1009, formerly 35 P.S. §§ 7651.101–7651.1102, repealed by the

Act of June 19, 2002, P.L. 394, 42 Pa.C.S. §§ 4701–4741.

tioner is *now* statutorily mandated." (Emphasis added.)

The collection of DNA samples was statutorily mandated under the Former Act as well, however. Indeed, Petitioner surrendered a DNA sample to the Department under the mandates of the Former Act.[4] Thus, as regarding Petitioner, the change in statutory law does not appear to present a change in any circumstances underlying the issuance of the permanent injunction. Further, while the distinction between 42 Pa.C.S. § 4716 and Section 306 of the Former Act, formerly 35 P.S. § 7651.306 is interesting, it is not a basis for the lifting of the permanent injunction in light of the fact that Petitioner has already provided a DNA sample that is currently on file with the State Police.[5]

The Current Act requires the taking of *a* DNA sample from subject persons. *See* 42 Pa. C.S §§ 4716–4717. Nowhere in the Current Act is it suggested that subject persons are required to submit to multiple episodes of having their DNA taken at the whim of the Department or the State Police. Indeed, the State police regulations regarding the procedures for the collecting, receipt, and processing of DNA samples specifically states: *"To prevent duplication of draw* ... a DNA Sample Tracking Sheet shall accompany the inmate and be placed into the inmate's file."* 37 Pa.Code § 58.21(d) (emphasis added).[6]

■ Moreover, the Department's apparent desire to obtain a second DNA sample, without having articulated any real need for such, raises constitutional concerns

that cannot be lightly dismissed. There is no doubt that the taking of a blood or tissue sample for purposes of obtaining DNA is a search and seizure governed by the restrictions of the Fourth Amendment of the United States Constitution. *Dial v. Vaughn,* 733 A.2d 1 (Pa.Cmwlth.1999). We have held that the taking of blood for purposes of DNA extraction is a "minimal" or "slight" intrusion to the inmate on balance with the "special need" to maintain an identification system for the purposes articulated by the legislature in creating the DNA Data Base. *Id.* at 7. Those purposes, however, are satisfied with the collection and storage of one sample per inmate. We do not hold that the State police may never under any circumstances take more than one sample of DNA per inmate under the Current Act. Without a valid reason for taking a second or subsequent draw from an inmate, however, the balance between the intrusion to the inmate and the Commonwealth's "special need" indeed appears to shift. The Current Act stays within constitutional limits by requiring the taking of *a* sample of DNA from the subject population. *See id.*

We would further note that the permanent injunction prohibits more than the taking of another DNA sample from Petitioner. It also enjoins the Department from imposing administrative sanctions upon or harassing and intimidating Petitioner because of his refusal to provide a DNA sample or his filing of the current suit against the Department. Nothing in the Current Act now permits the Department or any other agency from imposing

---

4. The Department's pleadings in this action indicate that a DNA sample was taken from Petitioner on June 22, 2000.

5. The State DNA Data Base is administered by the State Police pursuant to 42 Pa.C.S. § 4712.

6. The State Police are charged with prescribing the procedures to be used in the collection, submission, identification, analysis, storage, and disposition of DNA samples under the Current Act. 42 Pa.C.S. § 4718(a). *See also* 42 Pa.C.S. § 4711.

administrative sanctions upon inmates or harassing and intimidating them relative to the taking of DNA samples. The Current Act (as did the Former Act) provides only that "reasonable force" may be used when a member of the subject population refuses to provide a DNA sample. 42 Pa.C.S. § 4717(c).

██ Finally, we note that the sample of Petitioner's DNA currently in the possession of the State Police is not subject to expungement under the Current Act (as it was not under the Former Act) unless his conviction is reversed and the case dismissed. 42 Pa.C.S. § 4721. Because of this fact, the Department's failure to articulate a meaningful change in circumstances, and the Department's failure to articulate a valid reason to subject Petitioner to a second DNA extraction, the Department's motion to terminate or modify the permanent injunction is denied.[7]

### ORDER

AND NOW, this 1st day of April, 2003, the Motion to Terminate/Modify Injunction of the Department of Corrections in the above-captioned matter is hereby denied.

---

7. Even assuming that Petitioner has already been released, the issues raised by the Department are not moot since had we agreed with the Department's position, Petitioner might still have been required to surrender a DNA sample, notwithstanding the fact that he is no longer incarcerated. Because of our disposition, we need not address this issue. Moreover, even if the matter would be moot, we may review it because it raises a legal issue of great public importance. *St. Clair Memorial Hospital v. Department of Health*, 691 A.2d 1040 (Pa.Cmwlth.1997). This important issue is essentially whether the Department may collect a second DNA sample from an inmate when one is already on file with the State Police, without establishing any need or basis for so doing.