Eddie L. LUCKETT, Appellant·

v.

Conner BLAINE, David Day, Sharon D'Eletto, George Surma, Amy Shwed, CO–1 DiCianno, CO–3 Gumbarvic, Edward Blake, Joe Doe, "Toxicologist".

Commonwealth Court of Pennsylvania.

Submitted on Briefs Aug. 22, 2003.

Decided May 21, 2004.

Eddie L. Luckett, appellant, pro se.

Rodney M. Torbic, Pittsburgh, for appellees, Blaine, Day, D'Eletto, Gumbarvic and DiCianno.

Brian W. DelVecchio, Pittsburgh, for appellee, John Doe "Toxicologist".

David C. Hook, Waynesburg, for appellees, A. Shwed and E. Blake.

BEFORE: COLINS, President Judge, and LEAVITT, Judge, and KELLEY, Senior Judge.

OPINION BY Judge LEAVITT.

Eddie L. Luckett (Luckett) appeals, *pro se,* three orders of the Court of Common Pleas of Greene County (trial court) sustaining three sets of preliminary objections filed by the defendants to Luckett's Complaint. In the course of considering the preliminary objections, the trial court first dismissed certain defendants from Luckett's Complaint for damages and injunctive relief arising from alleged violations of his constitutional rights and, finally, dismissed the Complaint in its entirety with prejudice.[1]

---

1. Luckett filed three Notices of Appeal. The first notice, filed July 31, 2002, appealed the Order of July 8, 2002 that sustained preliminary objections and dismissed the Complaint as to John Doe "Toxicologist." Two notices, filed April 9 and April 16, 2003 appealed the Order of March 31, 2003 that dismissed the Complaint with prejudice. Nothing was filed to appeal the trial court's order of November 6, 2002 that dismissed the prison official defendants from the case. Three responsive briefs were filed to Luckett's appeal by Appel-lees Amy Shwed and Edward Blake, Appellee John Doe "Toxicologist," and Appellees Blaine, Day, D'Eletto, Gumbarvic, and Di-Cianno. Under the "merger rule," this Court's appellate review is extended to the order not identified in the notices of appeal because the specified and unspecified orders are connected, the intention to appeal the unspecified order is apparent, and the opposing party has not suffered prejudice and has had an opportunity to brief the issues. *K.H.*

Luckett alleges in his Complaint (1) that the DNA sample required of him pursuant to the requirements of the DNA Detection of Sexual and Violent Offenders Act[2] (DNA Act) was improper because he had previously given a DNA sample as part of the investigation of the crimes of rape and murder for which he was charged and convicted; (2) that the prison officials placed him in disciplinary custody (RHU) as improper retaliation for the *habeas corpus* petition and grievance he filed when his television was removed from his cell for six weeks; (3) that the law library available to those in disciplinary custody is inadequate;[3] and (4) that he was denied "access to prison grievance procedures."[4] The Complaint asserts violations of Luckett's rights under the First, Fourth, Eighth and Fourteenth Amendments to the U.S. Constitution and Article I, Sections 8 and 9 of the Pennsylvania Constitution.[5] The Complaint names certain employees at the State Correctional Insti-

tution at Greene (SCI–Greene) as defendants, including Superintendent Conner Blaine, Unit Manager David Day, Grievance Coordinator Sharon D'Eletto, Corrections Officer DiCianno, and Lieutenant Gumbarvic (collectively Prison Officials). The Complaint also names as defendants Forensic Science DNA Analyst Edward Blake (Private Toxicologist), who performed the laboratory tests on the DNA samples taken during the investigation of Luckett's criminal conduct; John Doe Toxicologist (Toxicologist) from Clinical Labs, Inc., who performed the laboratory tests on Luckett's urine sample during his incarceration; Lackawanna County Assistant District Attorney Amy Shwed, who prosecuted Luckett for rape and murder in 1992; and Pennsylvania State Police Lab Serologist George Surma, whose role is not specifically identified. The Complaint demands compensatory and punitive damages in the amount of $350,000, de-

---

*v. J.R.*, 573 Pa. 481, 493, 826 A.2d 863, 871 (2003).

2. Act of May 28, 1995, 1st Sp. Sess., P.L. 1009, No. 14, 35 P.S. § 7651.101–7651.1102, repealed by Section 5 of the Act of June 19, 2002, P.L. 394, and continued in the DNA Data and Testing Act, 42 Pa.C.S. §§ 4701–4741. The 1995 statute required the collection of DNA samples from inmates convicted of felony sex and other specified offenses, even if they were convicted prior to the effective date of the Act. The 2002 codification expanded this list of specified crimes.

3. Luckett specifically complains that the typewriters are reserved for death-row inmates and that the legal periodicals are not current. He characterizes these deficiencies as violations of constitutional guarantees to due process. Although Luckett lists this issue on the Statement of Questions Presented filed with the Notices of Appeal in the trial court, Certified Record, 7,8, he did not include the issue of the law library's inadequacy in the questions presented to this Court. The issue is, therefore, waived. Pa. R.A.P. 2116(a).

4. Luckett asserts that he was denied grievance procedures to challenge the actions of prison staff while he was in disciplinary custody in failing to inventory his personal property; failure to provide hygiene items, including soap, shower-shoes, and underwear; and failure to provide paper items such as medical forms and request slips. Gumbarvic was specifically named in this count. Complaint, Count IV.

5. Luckett refers to all of the above state and federal constitutional provisions in the introductory paragraph of his Complaint, but the body of his Complaint asserts that the actions of the prison officials violated the 14th Amendment's due process and equal protection clauses and the Fourth Amendment's proscription against unreasonable search and seizure. Complaint, Paragraphs 3 and 5. In his appeal to this Court, Luckett only addressed his Fourteenth Amendment right to due process. He has, therefore, preserved for this Court's review only the issue of his Fourteenth Amendment right to due process. Pa. R.A.P. 302(a) and 2116(a).

claratory and injunctive relief and attorney's fees.

On June 17, 2002, Toxicologist filed preliminary objections in the nature of a demurrer arguing that Luckett had failed to state a cause of action against Toxicologist. The trial court sustained this preliminary objection, without opinion, by order of July 8, 2002. Luckett's appeal of the trial court's order was dismissed by the Superior Court, *sua sponte*, on August 27, 2002, as premature.

On July 9, 2002, the Prison Officials filed preliminary objections in the nature of a demurrer. They contended that the Complaint failed to state a cause of action and that Luckett failed to exhaust his administrative remedies prior to filing his lawsuit as is required by the Prison Litigation Reform Act, 42 Pa.C.S. § 6603.[6] The trial court sustained these preliminary objections by order of November 6, 2002, dismissing the Prison Officials from the case. The trial court dismissed the first count because in *Dial v. Vaughn*, 733 A.2d 1, 6 (Pa.Cmwlth.1999) this Court held that the DNA Act did not violate the Fourth Amendment to the U.S. Constitution. In dismissing the second count, the trial court

found that Luckett failed to set forth a *prima facie* case of retaliation because he failed to aver facts to show a nexus between the protected activity, assuming the filing of a federal *habeas corpus* petition to be a protected activity, and his disciplinary confinement. Indeed, the Complaint itself averred that the disciplinary custody, ordered after hearings, was imposed because of Luckett's alcohol use.[7] The trial court dismissed the third count, challenging the adequacy of the law library, because the averments were conclusory and asserted only insignificant deficiencies in the prison law library, which failed to meet the actual injuries standard required under *Lewis v. Casey*, 518 U.S. 343, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996). The trial court dismissed the final count, in which Luckett asserted that the Prison Officials violated his First Amendment rights by failing to timely respond to his grievance regarding the lack of soap, toiletries and underwear. The trial court noted that Luckett failed to cite any authority that the prison's grievance procedures implicated his constitutional rights or created liability in damages.

**6.** 42 Pa.C.S. § 6603 (Limitations on remedies) provides:

> **(a) Limitations on remedies for Federal claims.**—Prison conditions litigation filed in or remanded to a court of this Commonwealth alleging in whole or in part a violation of Federal law shall be subject to any limitations on remedies established by Federal law or Federal courts with respect to the Federal claims.
>
> (b) Limitations on remedies under Pennsylvania law.—Prison conditions litigation arising in whole or in part due to an allegation of a violation of Pennsylvania law shall be subject to the limitations set forth in this act with respect to those claims arising under Pennsylvania law.
>
> **(c) Special masters.**—In prison conditions litigation arising in whole or in part under Pennsylvania law, the court shall not appoint a person to assist the court or delegate any

judicial function, including fact-finding, reporting or monitoring, unless the appointment or delegation is specifically authorized under Pennsylvania court rules. Any court order appointing a special master shall state the specific duties delegated to the special master. Any fact-finding by the special master shall be based upon the record.

**7.** The Complaint avers that Luckett tested positive for alcohol, that disciplinary hearings were held on August 27, 2001 and November 8, 2001 and that he was returned to disciplinary custody on November 4, 2001, for the "same misconduct." Complaint, Paragraphs 9, 12 and 15. The trial court determined that a return to disciplinary custody in November for the "same misconduct" precluded any possibility that the discipline was retaliation for a protected activity.

Blake and Shwed then filed preliminary objections, also asserting that Luckett failed to state a claim for which relief could be granted. Specifically, they noted that Luckett failed to exhaust his administrative remedies; failed to state a claim under the Fourth Amendment; failed to state a retaliation claim; and failed to state a claim of denial of access to the courts. Their preliminary objections were sustained by the trial court on March 31, 2003, which dismissed the Complaint with prejudice. The trial court determined that the only count that mentioned Blake and Shwed was the challenge to his DNA sample. However, the 1992 DNA sample taken during Luckett's investigation and prosecution was completely unrelated to the sample sought from Luckett by the Prison Officials that he challenged in the Complaint.

This appeal then followed.[8] On appeal, Luckett presents six questions for review. First, Luckett asserts that his rights to due process and equal protection were violated by the Prison Officials because they did not give him a hearing before requiring a DNA sample in December of 2001. Second, Luckett asserts that the trial court erred in finding that Blake and Shwed had nothing to do with the DNA sample required by the Prison Officials. Specifically, Luckett argues that Blake and Shwed had an affirmative duty to place his 1992 DNA sample into the State's DNA data base and to advise the Prison Officials of the existence of his 1992 sample. Third,

Luckett complains that he was denied "the post-deprivation remedy" of a due process hearing on the accuracy of his 1992 blood test and to determine whether "an erroneous deprivation exist (sic) in a second round of testing or not." Appellant's Brief at 23, 25. Fourth, Luckett complains that the trial court abused its discretion in staying discovery until the preliminary objections were decided, arguing that this stay of deprived him of the information he needed to establish a *prima facie* case. Fifth, Luckett asserts that the trial court erred in dismissing the retaliation claim because there were deficiencies in both the August and November disciplinary hearings. Finally, Luckett complains that the trial court erred in dismissing Luckett's claim that the prison grievance procedures, as implemented, violated his constitutional rights.

Luckett's appeal is a convoluted and less than lucid attack upon the orders of the trial court. Nevertheless, this opinion will review each issue raised by Luckett to determine whether the trial court erred in determining that no recovery is possible under the facts alleged and whether the Complaint was properly dismissed.

### The DNA Claim

The Complaint avers that Assistant District Attorney Shwed ordered DNA testing as part of the criminal investigation that led to Luckett's conviction for homicide

---

8. Our scope of review of a trial court order sustaining objections on the basis that the law will not permit recovery (demurrer) is whether, on the facts alleged, the law states with certainty that no recovery is possible. *Hawks by Hawks v. Livermore,* 157 Pa.Cmwlth. 243, 629 A.2d 270, 271 n. 3 (1993). We must accept as true all well-pleaded allegations and material facts averred in the complaint as well as inferences reasonably deductible therefrom and any doubt should be resolved in favor of overruling the demurrer. *Id.* However, we do not have to accept legal conclusions stated in the complaint. *Reider v. Bureau of Correction,* 93 Pa.Cmwlth. 326, 502 A.2d 272, 273 (1985). The allegations of a *pro se* complainant are held to a less stringent standard than that applied to pleadings filed by attorneys. *Id.* If, from a fair reading of the complaint, the complainant has pleaded facts that may entitle him to relief, the preliminary objections will be overruled. *Id.*

and sexual assault.[9] The testing was completed by the Private Toxicologist in April of 1992 on a DNA sample obtained from Luckett on February 21, 1992. Because the results of this testing were inconclusive, they were not used in any criminal proceedings.

Luckett contends that the results of this 1992 DNA testing have some exculpatory value because the results failed to conclusively establish his guilt. Accordingly, he believes that he has a "protected liberty interest" in the 1992 testing sample, of which he cannot be deprived without a due process hearing. Specifically, he believes that the second DNA test will permit the Commonwealth to destroy his 1992 DNA test results.[10] Luckett concedes that the governmental interest in maintaining a DNA data base of convicted criminals is legitimate and substantial. Luckett maintains, however, that this interest has been satisfied by his 1992 DNA sample; a "second round" of testing is of *de minimis* value to the Commonwealth and of some undefined detriment to him in overcoming his conviction.[11]

The DNA Act established the Commonwealth's DNA Data Base. It requires that a person convicted of a felony sex offense or other specified offense,[12] including murder, who is *or remains incarcerated on or after May 28, 1995*, shall have a DNA sample drawn upon intake to prison or thereafter by prison officials.[13] 42 Pa.C.S. §§ 4711, 4716. The DNA sample taken from Luckett on February 21, 1992, was taken prior to the enactment of the DNA Act in 1995 and as part of Luckett's investigation and prosecution. The 1992 sample was not taken under the DNA Act.

The DNA Act has been determined by this Court to be valid and not to violate the Fourth Amendment. *Dial v. Vaughn*, 733 A.2d 1, 6 (Pa.Cmwlth.1999). The 2002 codification of the DNA Act did not affect the continued validity of the *Dial* holding. The Legislature has charged the State Police with administration of the DNA data base, and it has authorized prison officials to compel prisoners to provide a DNA sample. However, the statute neither requires nor empowers the State Police to gather all DNA samples that may have been provided by criminal defendants in investigations that took place prior to the effective date of the statute, as Luckett suggests.

---

**9.** Luckett is serving a sentence of life, plus thirty years.

**10.** Luckett claims that the Commonwealth can seek a second DNA sample only where the Commonwealth demonstrates that such testing is essential to exonerate a defendant or where the initial testing has been determined invalid. However, the sample challenged by Luckett in his Complaint is the first one being taken under the DNA Act.

**11.** Luckett avers in his Complaint that he advised Day, Blaine, Shwed, Blake and Surma that he had provided a sample on February 21, 1992, and then asserts in his Brief on appeal that Shwed and Blake failed to inform prison officials that a prior sample had been taken. Luckett cites no authority for such a duty allegedly breached by Shwed and Blake.

**12.** "Felony sex offense" and "other specified offense" are defined within the statute as offenses under specific Pennsylvania criminal statutes. 42 Pa.C.S. § 4703. The list of included offenses was expanded in the 2002 codification to include incest, prostitution, felony unlawful contact with a minor, sexual exploitation of children, kidnapping, burglary and robbery, and the effective date for the additional offenses was increased to 180 days. *Id.;* Act of June 19, 2002, P.L. 394, § 7. Murder and rape were crimes included in the DNA Act of 1995 and continued in the 2002 codification of the DNA Act. *Id.*

**13.** Although the initial DNA sample was requested under the DNA Act of 1995, Luckett is required to provide a DNA sample under the 2002 codification because he "remains incarcerated." 42 Pa.C.S. § 4716.

Further, the DNA Act does not require a hearing prior to having the DNA sample drawn from those persons identified in the statute.[14] Under the claim of protecting a vague liberty interest in the inconclusive results of his 1992 DNA test, Luckett asserts that he was entitled to a hearing before SCI–Greene could require him to provide a DNA sample. Luckett relies upon *Whibby v. Department of Corrections*, 820 A.2d 829, 832 (Pa.Cmwlth.2003), in which this Court held that the State police had to provide a valid reason for taking a second DNA sample from an inmate.[15] In *Whibby*, we noted that, constitutionally, a balance must be maintained between the right of an inmate against intrusion and the need of the Commonwealth to establish a DNA system for identifying violent criminals. We held that the DNA Act balanced those competing concerns by requiring "*a* sample." *Id.* However, this Court did not foreclose the possibility of taking more than one sample under the proper circumstances; it simply required articulation of a valid reason to subject the prisoner to the second extraction where one sample had already been obtained under the DNA Act. *Id.*

In this case, the sample provided by Luckett to the State Police on February 21, 1992, predated the DNA Act. Further, the 1992 sample is not subject to expungement under the DNA Act, and Luckett has not cited any authority for this contention. DNA records included in the data base may be expunged only where the conviction is reversed and the case dismissed. Criminal history records, in-

cluding investigative information that was compiled prior to the 1995 passage of the DNA Act are subject to the requirements of the Criminal History Record Information Act, 18 Pa.C.S. §§ 9101–9183, including that act's limitations on expungement, 18 Pa.C.S. § 9122. Luckett's claims are grounded in his erroneous assumption that the DNA sample taken under the DNA Act will *replace* the previous sample taken during his prosecution. This error cannot support a cause of action.

The trial court dismissed the Complaint as to the Prison Officials because the statute gave them the right to take a DNA sample from Luckett without a hearing and by use of reasonable force, if necessary. 42 Pa.C.S. § 4717(c). Having determined that the statute is constitutional in *Dial* and that the facts averred fail to state a cause of action, we hold that the trial court did not err in sustaining the preliminary objections of the Prison Officials.

### Shwed and Blake Demurrer

Shwed and Blake are included only in Count I of the Complaint (subtitled "DNA") in which Luckett avers that he informed Shwed and Blake, along with the other defendants, that a DNA sample had been taken on February 21, 1992. Luckett asserts that Shwed and Blake "could have informed prison (sic) Luckett had already provided DNA." Appellant's Brief at 22. He fails, however, to assert any authority for the proposition that Shwed and Blake had any such duty.

---

**14.** Persons required to provide a DNA sample are those convicted or adjudicated delinquent for a felony sex offense or other specified offense who are or remain incarcerated on the effective date of the statute, and persons accepted into ARD as a result of a criminal charge for a felony sex offense or other speci-

fied offense filed on or after the effective date of the statute. 42 Pa.C.S. § 4716.

**15.** In that case, there was an issue raised as to whether the codification of the DNA Act in 2002 gave rise to a new right to conduct a DNA test.

The trial court determined that the facts averred in the Complaint failed to show that either Shwed or Blake had any involvement in the taking of DNA samples in December of 2001. Because this count failed to state a claim against the Prison Officials, who were acting within the specific provisions of the DNA Act of 1995, the trial court held that it could not state a claim against parties who did not participate in the taking of the sample. We agree with the trial court. The Complaint as to Shwed and Blake was correctly dismissed.

### Stay of Discovery

■ Having determined that the trial court properly dismissed the Complaint against Blake, we find no merit in Luckett's demand for discovery.[16] Discovery matters are within the discretion of the trial court and the appellate court employs an abuse of discretion standard of review. *Luszczynski v. Bradley,* 729 A.2d 83, 87 (Pa.Super.1999). Because challenges to discovery orders do not raise factual questions but, rather, legal questions, our scope of review is plenary. *In re Hasay,* 546 Pa. 481, 486, 686 A.2d 809, 812 (1996).

■ Luckett asserts that the requested discovery was "relevant to his establishing a prima facie case." Appellant's Brief at 28. Although Pennsylvania allows the use of discovery to aid in the preparation of pleadings, pre-complaint discovery does not authorize a "fishing expedition" to determine whether a cause of action exists. *See* Pa. R.C.P. No. 4001(c); *Lapp v. Titus,* 224 Pa.Super. 150, 302 A.2d 366 (1973). It is permissible if it is shown, first, that the plaintiff has set forth a *prima facie* case and, second, that the plaintiff cannot otherwise prepare and file a complaint. *McNeil v. Jordan,* 814 A.2d 234, 246 (Pa.Super.2002). A plaintiff must have a *prima facie* case in the first instance. Discovery may be appropriate to obtain particular facts, such as all proper parties liable to plaintiff for injury, or the identity and whereabouts of witnesses; it is not for determining whether a pleading shall be prepared in the first instance. *Id.* In the case *sub judice,* Luckett has prepared and filed a Complaint. He asserts that he cannot establish a *prima facie* case without the requested discovery. If the assertion is true, it entirely defeats Luckett's right to discovery, and it further justifies dismissal of the Complaint by the trial court.

The trial court's order of December 5, 2002, staying all discovery was not an abuse of discretion. The Rules of Civil Procedure permit discovery of "any matter ... which is relevant to the subject matter involved in the *pending action.*" Pa. R.C.P. No. 4003.1(a) (emphasis added). This includes, as was requested by Luckett in this case, a request for production of "documents and things." *Id.*[17] The right to discovery ends when the case is no longer a "pending case," and Luckett's re-

---

16. Shwed and Blake assert in their brief that this issue has been waived by Luckett's failure to preserve the objection. Luckett attaches to his brief the December 5, 2002 Order which stays discovery. The Order is contained in the Certified Record, and Luckett addressed this issue in his statement of issues in both of the appeals that he filed. We will therefore review this issue pursuant to the merger rule. *See supra* note 1.

17. Luckett requested the right to inspect an extensive list of laboratory records related to the DNA testing by filing a Petition for Discovery and Inspection on November 4, 2002, and sought to enforce this Petition by Motion for Compulsory Disclosure Discovery and Inspection filed on December 4, 2002. Luckett asserted in the latter motion that he was requesting a "protective order" but it is assumed that he has confused the provisions of the discovery rules.

quest for discovery after his Complaint has been dismissed lacks merit.

The Rules of Civil Procedure also permit the filing of a motion for a protective order, Pa. R.C.P. No. 4012, and the stay of proceedings by order of court until disposition of the protective motion, Pa. R.C.P. No. 4013. Blake and Shwed did not file a motion for a protective order or respond to Luckett's request for discovery;[18] however, they filed preliminary objections to the Complaint before expiration of the thirty-day discovery reply period. Accordingly, the Court stayed discovery until resolution of those objections and took no further action on Luckett's motion to compel discovery.

Rule 4009.1 does not prevent a court from entering an order *sua sponte* to protect a document or thing from discovery, or from staying a proceeding under its common law powers. Pa. R.C.P. 4009.1, Note. Every court has the inherent power to schedule disposition of the cases on its docket to advance a fair and efficient adjudication. Incidental to this power is the power to stay proceedings, including discovery. How this can best be done is a decision properly within the discretion of the trial courts. *Gold v. Johns–Manville Sales Corp.*, 723 F.2d 1068, 1077 (3rd Cir. 1983). Thus, a court is authorized to enter discovery orders "for the convenience of parties ... and in the interest of justice." Pa. R.C.P. No. 4007.3, Explanatory Comment–1978 (quoting Fed.R.Civ.P. 26(d)).

Here, the interests of justice were served by permitting Blake and the other defendants the opportunity to show that the claims raised in the Complaint failed to state a cause of action before burdening them with discovery demands. Fact-pleading functions to narrow the issues. Where the defendant has demurred to the complaint, it cannot be determined whether the discovery sought by the plaintiff is even relevant. *McNeil*, 814 A.2d at 244. In the present case, we discern no abuse of discretion in the trial court's refusal to permit discovery by any party before ruling on the preliminary objections of defendants.

### Retaliation Claim

Luckett avers in his Complaint that the Prison Officials were informed that he tested positive for alcohol and that he was placed in disciplinary custody four days later. He asserts in his brief that this custody was in retaliation for a federal *habeas corpus* petition that he filed at some time prior to the urine testing that proved alcohol consumption by Luckett. Luckett maintains in his brief that the removal of Luckett's television from his cell precipitated the *habeas corpus* filing. Assuming that the filing of the federal petition was a protected activity, Luckett failed to plead any facts establishing a causal link between his exercise of constitutional rights and his placement in disciplinary custody. The trial court properly determined that Luckett failed to show that any adverse action taken by the Prison Officials was motivated to interfere with a protected activity.[19] Stated otherwise, he did not plead facts to support a retaliation claim.

---

18. Pa. R.C.P. 4009.12(a) requires a response within 30 days after service of the request.

19. Luckett is required to establish that (1) the conduct which led to the alleged retaliation was constitutionally protected, (2) that he suffered some adverse action at the hands of the prison officials, and (3) that there is a causal link between the exercise of his constitutional rights and the adverse action taken against. *Anderson v. Davila*, 125 F.3d 148, 161 (3d Cir.1997); *Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir.2001).

■ Luckett's additional challenges to the manner in which the disciplinary proceeding was conducted do not rise to the level of a constitutional claim. "The Constitution does not require strict adherence to administrative regulations and guidelines." *Flanagan v. Shively*, 783 F.Supp. 922, 931 (M.D.Pa.1992). The Constitution only requires compliance with minimal federal due process standards protected by the Due Process Clause of the Fourteenth Amendment. *Id.* The trial court correctly recognized that Luckett failed to identify a liberty interest worthy of due process protections. His insistence that he has a constitutional right to strict adherence, without any deviation in time or manner, by prison officials to the language of the Department of Corrections Administrative Regulation 801 (DC–ADM 801) is not supported by case law precedent. Mandatory language in a state regulation or directive is no longer the sole criterion for finding the creation of a liberty interest. *Sandin v. Conner*, 515 U.S. 472, 483, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995).

■■ The trial court reviewed Luckett's claim under the standard set forth in *Sandin*, which provides that only those regulations that impose atypical sanctions and significant hardships when compared to the normal incidents of prison life implicate the Constitution. *Id.* at 484, 115 S.Ct. 2293. The trial court here correctly concluded that temporary residence in RHU at SCI–Greene is simply not atypical or significant when compared to the usual incidents of prison life at that institution.[20] Neither the prison regulation in question nor the Due Process Clause itself affords Luckett a protected liberty interest that would entitle him to the procedural protections he demands. *Cf. Wolff v. McDonnell*, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974) (holding that a statutory provision for credit for good behavior created a liberty interest in a shortened prison sentence and articulated minimum procedures necessary to accommodate institutional needs and objectives and the provisions of the Constitution).

### Access to Grievance Procedures

■ Luckett complains that the trial court erred in dismissing his claim that he had a constitutional right to hold Prison Officials to the timelines provided in the prison's grievance procedures. Here, he asserts that the Prison Officials did not timely respond to his grievances, that SCI–Greene failed to inventory his personal property and failed to provide him with soap, shower shoes, underwear, paper, medical forms and request slips. The trial court found that the grievance procedures were established by Department of Corrections regulations, and, as such, they do not implicate rights under the United States and Pennsylvania Constitutions. *Sandin v. Conner*, 515 U.S. 472, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995). We agree with the trial court.

---

**20.** Luckett specifically complains about irregularities in the misconduct proceedings, including that the misconduct was written late, he was denied the presence of his witness, he did not receive a response to his appeal promptly, and he questioned the chain of custody of the urine sample. He additionally complains that he spent four days more in RHU than required by the disciplinary finding. The Supreme Court has indicated that these are the day-to-day management issues faced by prison officials that do not create rights for prisoners enforceable in court. *Sandin*, 515 U.S. at 482, 115 S.Ct. 2293. In the *Sandin* court's view, micromanagement of prisons by the courts is a squandering [of] judicial resources with little offsetting benefit to anyone .... [and] has run counter to the view expressed in several of our cases that federal courts ought to afford appropriate deference and flexibility to state officials trying to manage a volatile environment. *Id.*

## Conclusion

From a fair reading of the Complaint, this Court is constrained to find that Luckett failed to plead facts that entitle him to relief. The trial court did not err in sustaining the preliminary objections and dismissing the Complaint with prejudice. Accordingly, we affirm the order of the trial court.

## ORDER

AND NOW, this 21st day of May, 2004 the order of the Court of Common Pleas of Greene County dated March 31, 2003 in the above-captioned matter is hereby affirmed.